## J. K. vs. COMMONWEALTH.

No. 89-P-179.

Barnstable. February 9, 1990. - July 2, 1990.

Present: WARNER, C.J., ARMSTRONG, & PERRETTA, JJ.

*Commonwealth*, Duty to prevent harm, Liability for tort. *Massachusetts Tort Claims Act. Actionable Tort. Negligence*, Public officer.

The Commonwealth's decision to relocate two prospective witnesses in a pending murder trial to a certain town without alerting local authorities or requesting that the witnesses be supervised was a discretionary decision within the meaning of G. L. c. 258, § 10 (*b*), with the result that a claim for personal injuries by a woman who had been assaulted by the witnesses was not within the scope of the Massachusetts Tort Claims Act. [764-766]

In an action against the Commonwealth under the Massachusetts Tort Claims Act by a woman who had been assaulted by two prospective witnesses in a pending criminal trial, whom the Commonwealth had relocated to the town in which she resided, the plaintiff was unable, as matter of law, to show that the Commonwealth owed her a special duty of care beyond the duty it owed the public at large. [766-768]

CIVIL ACTION commenced in the Superior Court Department on December 3, 1981.

The case was heard by *Elizabeth J. Dolan*, J., on a motion for summary judgment and a question of law was reported by her.

*Patricia Randall* for the plaintiff.

*William A. Mitchell*, Assistant Attorney General (*Patrick J. Moynihan*, Assistant Attorney General, with him) for the Commonwealth.

PERRETTA, J. While walking home in Provincetown on the night of November 1, 1980, the plaintiff was accosted by two men who were lodged at a local inn by arrangement on behalf of the Commonwealth (defendant). The men were Commonwealth witnesses to a murder. For four hours, the men

repeatedly raped the plaintiff. She brought this action under G. L. c. 258, alleging that the defendant had placed these men in Provincetown with knowledge that they were dangerous and without taking measures for their supervision or monitoring. On the undisputed facts, a Superior Court judge concluded that she was constrained to allow the defendant's motion for summary judgment. She did not, however, enter a judgment dismissing the case because she also concluded that her ruling raised a current and important question of law which she has reported to this court under G. L. c. 231, § 111, and Mass.R.Civ.P. 64, 365 Mass. 831 (1974): "whether the Trial Court was correct in deciding that, despite the Commonwealth's role in housing the plaintiff's assailants and its knowledge of their criminal records, no special relationship existed between the plaintiff and the Commonwealth; therefore the Commonwealth owed no special duty of care to the plaintiff beyond that which it owed to the general public." We conclude that the judge correctly allowed the defendants' motion and remand the matter to the Superior Court for entry of a judgment on her order.

I. *The Undisputed Material Facts.*

We relate the undisputed material facts recited and relied upon by the judge in her memorandum of decision on the order. In September of 1980, Stanley Dutra and Michael Shagoury stood and watched two men known to them drown a man in a cranberry bog in Mashpee. They went to the Mashpee and State police and the district attorney and admitted their involvement in the crimes against that victim. They also appeared before the Barnstable County grand jury. Thereafter, the grand jury indicted Dutra and Shagoury for assault and battery of the man, and the other two men were charged with his murder.

A few weeks after the indictments were returned, Dutra and Shagoury expressed concerns about their safety to the district attorney's office. It was decided to send the men to Provincetown, and a State trooper assigned to that office made the arrangements for Dutra and Shagoury's relocation. Specifically, the trooper contacted the Provincetown chief of

police, informed him that the district attorney's office wanted to relocate to Provincetown two witnesses to a homicide, and asked for hotel recommendations.

On the evening of October 31, the trooper brought Dutra and Shagoury to Provincetown and registered them at the Provincetown Inn. The registration form indicated that the bill was to be sent to the district attorney for the Cape and Islands District. On their first night in Provincetown, Dutra and Shagoury held a loud party in their room which prompted the manager of the inn to notify the chief of police. No one informed the district attorney's office, and the chief took no action in the matter. It was on the second night of their stay in Provincetown that Dutra and Shagoury repeatedly raped and sodomized the plaintiff and forced her to engage in oral sex with them. Their brutal attack began outside, but, when the plaintiff became so cold that she could not control her violent shivering, Dutra and Shagoury forced her into an unlocked van.

As of the date of the incident, Dutra's criminal record dated back to 1976, when he was a juvenile. As an adult, he had been convicted of a number of violent offenses: simple assault and battery, assault and battery on a police officer (multiple incidents), and assault and battery with a dangerous weapon, a tire iron. Shagoury's record consisted of a number of property and violent offenses, all committed as a juvenile.[1]

II. *The Theory of Liability.*

There are no allegations by the plaintiff that Dutra or Shagoury knew her prior to their attack or that there was any kind of relationship between her and them of which the defendant should have been aware. Liability is grounded upon the premise that the defendant had the duty to protect the plaintiff from the two men. The plaintiff claims a breach of that duty by reason of the defendant's failures: (1) to in-

---

[1]The men were tried and convicted for their crimes against the plaintiff. Dutra was sentenced to a thirty-five to forty-year State prison term and Shagoury received a sentence of life imprisonment. See *Commonwealth* v. *Dutra*, 15 Mass. App. Ct. 542 (1983).

form the Provincetown police and the inn management of the criminal charges pending against Dutra and Shagoury (assault and battery and robbery), as well as of their criminal history; (2) to request the inn management to notify the district attorney's office of any problems with the men; and (3) to request the Provincetown police to monitor or supervise them.

III. *The Discretionary Function Exception.*[2]

Section 10(*b*) of G. L. c. 258, as inserted by St. 1978, c. 512, § 15, removes from the scope of the Massachusetts Tort Claims Act "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused." In determining whether this exception applies in a given situation, we are to be guided by those considerations discussed in *Whitney* v. *Worcester*, 373 Mass. 208 (1977), "an opinion which played a major role as an incentive to the Legislature to enact the Tort Claims Act." *Cady* v. *Plymouth-Carver Regional School Dist.*, 17 Mass. App. Ct. 211, 213 (1983). See *Patrazza* v. *Commonwealth*, 398 Mass. 464, 467 (1986).

As set out in *Whitney* v. *Worcester*, 373 Mass. at 219, the "following inquiries are relevant: Was the injury-producing conduct an integral part of governmental policy-making or planning? Might the imposition of tort liability jeopardize

---

[2]The defendant's motion for summary judgment was broadly worded and made no reference to G. L. c. 258, § 10(*b*). Allowance of the motion was expressly based upon the public duty rule. See *Dinsky* v. *Framingham*, 386 Mass. 801 (1982). We have before us, however, everything necessary to a consideration of the applicability of § 10(*b*) to these circumstances. Further, the parties contest in their briefs the discretionary nature of the defendant's actions, albeit without specific reference to the statutory exception. As the case is before us on a report and not on an appeal from a summary judgment, we think the issue of the exception is properly before us. In any event, because the entire action raises an issue pertaining to the public interest by reason of the nature of the defendant's actions here involved, as noted by the judge in her report, we think it appropriate that we consider the discretionary function exception. Cf. *Matter of Moe*, 385 Mass. 555, 557 n.2 (1982).

the quality and efficiency of the governmental process? Could a judge or jury review the conduct in question without usurping the power and responsibility of the legislative or executive branches? Is there an alternate remedy available to the injured individual other than an action for damages? These considerations, in a particular case, indicate whether governmental immunity should attach. Where such considerations are not determinative, governmental liability should be the general rule."

These considerations led the court in *Cady* v. *Plymouth-Carver Regional School Dist.*, 17 Mass. App. Ct. at 217, to conclude that the discretionary function exception applied to school authorities who allowed two students who had attacked the plaintiff student to return to school without having taken any precautionary measures to protect the plaintiff from further harm. Although that case involved facts far less egregious than those in the instant case, situations comparable to the present have been found to be within the cognate discretionary function exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(a) (1988). See, e.g., *Bergmann* v. *United States*, 689 F.2d 789 (8th Cir. 1982), holding that an action for the wrongful death of a police officer murdered by an unsupervised person relocated under the Federal witness security program could not be maintained.

"It is important to note at the outset that there is a considerable area of discretion in prosecutors which permits the exercise of some selectivity for valid reasons consistent with the public interest (e.g., prosecution is forgone in the interest of gaining a cooperative witness). We have no intention of suggesting a narrowing of that area of valid prosecutorial discretion." *Commonwealth* v. *King*, 374 Mass. 5, 19-20 (1977). We think that the defendant's decision to relocate Dutra and Shagoury to Provincetown without alerting local authorities to the details of the reasons for the move or requesting that they be supervised was a discretionary decision. "If the public employee is required to decide and act without fixed or readily ascertainable standards to fall back upon, that act is a discretionary function. *Barton* v. *United States*, 609 F.2d

977, 979 (10th Cir. 1979). That the discretion conferred may have been abused is of no matter. It is the nature of the governmental act, not the care with which it is performed, that determines whether the exception applies." *Cady* v. *Plymouth-Carver Regional School Dist.*, 17 Mass. App. Ct. at 215, citing *Dalehite* v. *United States*, 346 U.S. 15, 35 (1953). See also *Patrazza* v. *Commonwealth*, 398 Mass. at 468-469, quoting from *United States* v. *Varig Airlines*, 467 U.S. 797, 811-812 (1984), quoting from *Dalehite* v. *United States*, 346 U.S. at 35-36. Compare *A.L.* v. *Commonwealth*, 402 Mass. 234, 246 (1988) ("A probation officer's duty to make reasonable efforts to ascertain whether a probationer has complied with the terms of his or her probation [as established by the sentencing judge] is not a discretionary function within the meaning of G. L. c. 258, § 10[*b*]").

IV. *The Public Duty Doctrine.*

An additional basis, and the one relied upon by the judge, for allowing the defendant's motion is the plaintiff's inability, as matter of law, to "show that the defendant[] owed her a special duty of care beyond the duty owed to the public at large. *Nickerson* v. *Commonwealth*, [397 Mass.] 476, 478 (1986). *Riberio* v. *Granby*, 395 Mass. 608, 613 (1985). *Dinsky* v. *Framingham*, 386 Mass. 801, 810 (1982)." *Appleton* v. *Hudson*, 397 Mass. 812, 815 (1986). See also *A.L.* v. *Commonwealth*, 402 Mass. at 240-241; *Sampson* v. *Lynn*, 405 Mass. 29, 31-32 (1989). The obligation to provide police protection has been recognized as a duty "owed to the public at large and not to any particular person who might be injured." Prosser & Keeton, Torts § 131, at 1049 (5th ed. 1984). See *Appleton* v. *Hudson*, 397 Mass. at 816. See generally Annot., Liability of Municipality or Other Governmental Unit For Failure to Provide Police Protection, 46 A.L.R.3d 1084 (1972).

Under the principles set out in these cases and authorities, it would seem that our discussion would end here. The plaintiff claims, however, that, as a winter resident of Provincetown, she was owed a special duty of care. Her argu-

ment is based upon the following facts which we will accept as true for purposes of our decision.

After the summer ends, nonresidents of Provincetown are easily noticed. Disruptive visitors to the town become targets of close police scrutiny. In the normal course of events, Dutra and Shagoury's loud party, made known to the police by the inn manager, would have prompted some type of police activity. The information conveyed to the local police by the defendant, that the men were Commonwealth witnesses to a murder, led the police to regard these men, perhaps, as civic-minded individuals, or, more likely, as recipients of preferential treatment from higher authorities which was not to be interfered with or questioned by the local police.

These facts, the plaintiff claims, bring her within the scope of *Irwin* v. *Ware*, 392 Mass. 745, 756-757 (1984), that is, the defendant created a risk of immediate and foreseeable injury to the winter residents of Provincetown by relocating Dutra and Shagoury without fully advising the police of their violent natures. However, in *Appleton* v. *Hudson*, 397 Mass. at 816, the court reemphasized that the conclusion reached in *Irwin* was based upon the " 'legislative intent to protect both intoxicated persons and other users of the highway' *and* on 'the risk created by the negligence of a municipal employee . . . of immediate and foreseeable physical injury to persons who cannot reasonably protect themselves from it' " (emphasis in original; citations omitted).

Neither Dutra and Shagoury's criminal history nor their loud party the night before their vicious and brutal attack upon the plaintiff makes them "foreseeably identifiable perpetrator[s]" of harm, *Appleton* v. *Hudson*, 397 Mass. at 816, such as an intoxicated person driving on our public roads. As explained in *A.L.* v. *Commonwealth*, 402 Mass. at 242-243: "Where officials know of such a chronic and obvious threat of harm to known victims, we do not ascribe a talismanic significance to the temporal immediacy of the harm. Rather, we analyze the temporal immediacy aspect of *Irwin* in terms of the type of danger at issue." Dutra and Shagoury, as repeat criminal offenders, posed a general risk to the public at

large. The plaintiff's winter residency in Provincetown does not establish her "as a member of an identifiable subclass [owed] a special duty of care." *Sampson* v. *Lynn*, 405 Mass. at 31. See also *Foley* v. *Boston Hous. Authy.*, 407 Mass. 640, 646 (1990). She was their random victim.

These tragic circumstances bring the case within the public duty doctrine and outside the scope of the Massachusetts Tort Claims Act. The defendant's motion for summary judgment was correctly allowed.

Accordingly, our answer to the reported question is in the affirmative, and the matter is remanded to the Superior Court for entry of a judgment dismissing the plaintiff's complaint.

*So ordered.*