### UNITED STATES of America

v.

### Martin FERNANDEZ.

### Criminal No. 95–10163–WGY.

United States District Court,
D. Massachusetts.

Sept. 18, 1996.

John F. Palmer, Law Office of John F. Palmer, P.C., Boston, MA, Bernard Grossberg, Boston, MA, for William Ekasala.

Miriam Conrad, Office of the Federal Defender, Boston, MA, for Martin Fernandez.

Robert E. Richardson, United States Attorney's Office, Major Crime's Division, Boston, MA, for U.S.

## MEMORANDUM OF DECISION

YOUNG, District Judge.

On February 5, 1996, Martin Fernandez pled guilty before this Court to an indictment charging him with bank robbery in violation of 18 U.S.C.A. § 2113(a) (West 1994). The indictment charges that, on March 22, 1995, Fernandez, accompanied by William Ekasala ("Ekasala"),[1] stole approximately $1537.00 from U.S. Trust, a bank in Milton, Massachusetts. Indictment at 1.

At the time of his bank robbery conviction, Fernandez' criminal history included, *inter alia,* the following two convictions: 1) In January 1993, Fernandez was found guilty of assault and battery with a dangerous weapon; 2) On March 2, 1993, at a jury-waived trial in the Municipal Court of the City of Boston, Fernandez was convicted of assault and battery on a police officer and of disor-

derly conduct. Trial Transcript, Boston Municipal Court Jury Session Docket No. 922238A–E, at 96.

Under United States Sentencing Guidelines ("U.S.S.G.") section 4B1.1, a district court may enhance a defendant's sentence as a career offender if 1) the defendant was at least eighteen years old at the time of the instant offense, 2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and 3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1.[2]

Based principally upon the prior convictions mentioned above and the career offender enhancement provision of section 4B1.1, the Probation Officer calculated Fernandez' final adjusted offense level at 29 and his criminal history at category IV, and recommended an imprisonment range of 151 to 188 months. Presentence Report ¶ 74.

Fernandez does not dispute that he falls within the first two elements of section 4B1.1—he concedes that he committed the bank robbery after turning eighteen and that the bank robbery conviction qualifies as a crime of violence. Nor does Fernandez contend that the January 1993 conviction fails to qualify as a crime of violence. Fernandez does argue, however, that he is not a career offender on the ground that his criminal record lacks the requisite pair of offenses under the third prong of section 4B1.1. Specifically, Fernandez' contention is that his March 1993 conviction for assault and battery on a police officer is not a crime of violence. Nonetheless, this Court sentenced Fernandez to 151 months in the custody of Bureau of Prisons to be followed by three years of supervised release with special conditions. This memorandum explains the Court's reasoning.

### I. Crimes of Violence

The United States Sentencing Commission ("the Sentencing Commission") defines

1. On December 28, 1995, Ekasala pled guilty to the indictment. Presentence Report at 2.

2. This Court applies the United States Sentencing Guidelines Manual in effect at the time of an

offender's sentencing. U.S.S.G. § 1B1.11(a). Fernandez is therefore subject to the guidelines in effect in May 1996.

"crime of violence" as any federal or state offense punishable by more than a year in prison that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(1).

 Furthermore, Application Note Two[3] to section 4B1.2 explains that

> "[c]rime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included where (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (*i.e.,* expressly charged) in the count of which the defendant was convicted involved use of explosives ... or, by its nature, presented a serious potential risk of physical injury to another. Under this section, the conduct of which the defendant was convicted is the focus of inquiry.

U.S.S.G. § 4B1.2, Application Note Two.

The Supreme Court in *Taylor v. United States,* 495 U.S. 575, 602, 110 S.Ct. 2143, 2160, 109 L.Ed.2d 607 (1990), set forth a formal categorical approach to determine whether a given offense was a "violent felony" under the Armed Career Criminal Act ("the Criminal Act"), 18 U.S.C. § 924(e)(2)(B). Daunted by the prospect of conducting a burdensome mini-trial involving witnesses and transcript testimony to determine the actual nature of the conduct underlying the defendant's prior conviction, the *Taylor* Court opted for the categorical approach over a fact-intensive analysis. *Taylor,* 495 U.S. at 601–02, 110 S.Ct. at 2159–60. The categorical approach was designed "to capture all offenses of a certain level of seriousness that involve violence or an inherent risk thereof, and that are likely to be committed by career offenders." *Id.* at 590, 110 S.Ct. at 2154.

Courts have applied the categorical approach in *Taylor* to their determinations of whether an offense constitutes a crime of violence under U.S.S.G. § 4B1.1.[4] *United States v. DeLuca,* 17 F.3d 6, 7–9 (1st Cir. 1994); *United States v. De Jesus,* 984 F.2d 21, 23 (1st Cir.1993); *Fiore,* 983 F.2d at 3; *United States v. Spell,* 44 F.3d 936, 939 (11th Cir.1995); *see also United States v. Gonzalez–Lopez,* 911 F.2d 542, 548 (11th Cir.1990), *cert. denied,* 500 U.S. 933, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991).

### A. Classifying Crimes of Violence: Section 4B1.2(1)

If a sentencing court finds "an element of use, attempted use, or threatened use of physical force" in the offense, then the crime qualifies as a crime of violence and the inquiry ends there. U.S.S.G. § 4B1.2(1); *but see De Jesus,* 984 F.2d at 23 (stating that larceny did not fit within subsection [i] of U.S.S.G. § 4B1.2[1] because it did not contain an element of force). If, however, an element of force does not exist in the offense, the crime may still be a crime of violence if it falls within the enumerated crimes or within the meaning of the "otherwise" clause of section 4B1.2(1)(ii), that is, if the crime "involves

---

**3.** Although the Sentencing Commission's application notes "do not possess the force of law, they are important interpretive aids, entitled to considerable respect." *United States v. Weston,* 960 F.2d 212, 219 (1st Cir.1992). In general, a court ought "defer to the Commission's suggested interpretation of a guideline provision unless the Commission's position is arbitrary, unreasonable, inconsistent with the guideline's text, or contrary to law." *United States v. Fiore,* 983 F.2d 1, 2 (1st Cir.1992), *cert. denied,* 507 U.S. 1024, 113 S.Ct. 1830, 123 L.Ed.2d 458 (1993); *see also United States v. Joshua,* 976 F.2d 844, 855 (3rd Cir.1992).

**4.** The striking similarity between the Criminal Act's definition of "violent felony," 18 U.S.C. § 924(e)(2)(B), and the "crime of violence" definition in U.S.S.G. § 4B1.2(1), has led courts to treat authority interpreting one term as persuasive in interpreting the other. *De Jesus,* 984 F.2d at 24; *Fiore,* 983 F.2d at 3 & n. 2 (using Taylor approach to the Act as "a beacon by which [it] must steer" in interpreting ambit of "crime of violence"); *United States v. Bell,* 966 F.2d 703, 704–06 (1st Cir.1992) (explaining that Taylor furnishes the methodology of choice for determining whether specific felonies constitute crimes of violence).

conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(1)(ii); *De Jesus,* 984 F.2d at 23.

 Risk is the critical term in the above clause. Analyzing an offense under the "otherwise" clause of section 4B1.2(1)(ii), a court should focus not on the scope of the statutory language but, rather, on the "degree of risk, expressed in terms of the probability of physical harm presented by the mine-run of conduct that falls within the heartland of the statute." *De Jesus,* 984 F.2d at 24. Viewed generally, an offense must possess an inherent risk of violent outbreak to fall within the crime of violence penumbra. *Id.* at 25; *see Fiore,* 983 F.2d at 3–4 (the substantial potential for episodic violence created by breaking into commercial buildings pulls such offenses into the "crime of violence" ambit). *But see United States v. Winter,* 22 F.3d 15, 19–20 (1st Cir.1994) (holding sports bribery and Travel Act violation were not crimes of violence because they lacked a substantial risk of violent outbreak). Stated another way, where "violence is not a usual accoutrement" of the crime, the "otherwise" clause in U.S.S.G. § 4B1.2(1)(ii) does not apply and the conviction proves to be a poor candidate for inclusion as a predicate offense. *Winter,* 22 F.3d at 21.

**B. Limited Scope of Inquiry in Determining Crimes of Violence**

 While *Taylor* held that courts should generally limit their inquiry to the fact of conviction and the statutory definition of the prior offense, it is well settled that a court sometimes may look beyond the statutory language in determining crimes of violence. *Taylor,* 495 U.S. at 602, 110 S.Ct. at 2160; *United States v. Harris,* 964 F.2d 1234, 1235 (1st Cir.1992); *United States v. Bregnard,* 951 F.2d 457, 459 (1st Cir.1991), *cert. denied,* 504 U.S. 973, 112 S.Ct. 2939, 119 L.Ed.2d 564 (1992). In *Taylor,* the Supreme Court allowed inquiry beyond the statute in a narrow range of cases where it is clear that the factfinder was actually required to find all

the elements of an offense in order to qualify it as a predicate offense. *Taylor,* 495 U.S. at 602, 110 S.Ct. at 2160. Furthermore, where a statute is vague or covers both violent and non-violent offenses, courts may look beyond the statute to pertinent court documents.[5] *Harris,* 964 F.2d at 1236.

Other decisions within this circuit contain similar language, suggesting that, as part of a predicate offense inquiry, courts may examine charging papers, jury instructions and other court documents. *See De Jesus,* 984 F.2d at 23 n. 5. ("[T]here are certain limited circumstances where a court may appropriately peruse certain documents *such as* the charging papers or jury instructions.") (emphasis added); *see also Winter,* 22 F.3d at 20 ("Taylor demands that a court ... consult a limited array of materials—*principally* the indictment and the jury instructions....") (emphasis added).

The nature and scope of this approach merit closer attention. Recent U.S.S.G. amendments and the resulting case law developments have narrowed the scope of inquiry, reflecting the Sentencing Commission's commitment to preserving a categorical approach. *United States v. Palmer,* 68 F.3d 52, 57 (2d Cir.1995) (citing amendments to section 4B1.2[1] ).

For instance, the current definition of "crime of violence" in U.S.S.G. § 4B1.2(1) which became effective on November 1, 1989, matches the definition of "violent felony" in 18 U.S.C. § 924(e)(2)(B). United States Sentencing Guidelines Manual, Appendix C, Amendment 268 (1994). At the time the Sentencing Commission adopted this definition of "crime of violence," it also amended the commentary to section 4B1.2(1) by replacing "conduct set forth in the count of which the defendant was convicted" with "the conduct for which the defendant was specifically convicted." *Id.; see Palmer,* 68 F.3d at 57 (citing recent amendments to section 4B1.2[1] ). Thus, the Sentencing Commission instructed courts to place greater emphasis on the charging instrument in deter-

---

5. Nevertheless, even when a court looks beyond the statute, it must continue to bring a categorical approach to the analysis. Rather than plunging headlong into the details of a defendant's actual conduct, the court should merely assess the nature of the activity as described in documents such as the jury instructions or indictment. *Winter,* 22 F.3d at 19.

mining whether a given offense was a "crime of violence."

In 1991, the Sentencing Commission reinforced this focus on the charging instrument by amending Application Note Two of section U.S.S.G. 4B1.2. United States Sentencing Guidelines Manual, Appendix C, Amendment 433 (1994); *see Palmer*, 68 F.3d at 56–57 (citing recent amendments to Section 4B1.2[1] ). Under this amendment, a court determines a "crime of violence" by looking at the conduct "expressly charged." United States Sentencing Guidelines Manual, Appendix C, Amendment 433 (1994). This amendment also limits the inquiry to "the conduct of which the defendant was convicted." *Id.*

■ Subsequent to these amendments, courts have followed suit in their decisions by substantially restricting their inquiry into the violent nature of the defendant's prior conviction. *See Palmer*, 68 F.3d at 57–58 (citing recent decisions circumscribing the scope of inquiry under section 4B1.2[1][ii] ). Nevertheless, while the above analysis precluded inquiry into presentence reports, the court in *Palmer* still allowed inquiry into plea proceedings where the absence of a jury trial precluded jury instructions. *Id.* at 59. In the absence of jury instructions, a court may resort to other "easily produced and evaluated court documents" that clearly establish the specific conduct underlying the defendant's conviction. *Id.* at 59 (quoting *Spell*, 44 F.3d at 939).

Despite the narrowed inquiry set forth by these amendments, courts continue to authorize examination of other court documents, especially where no jury instructions are available for retrospective review, to determine whether a given offense qualifies as a "crime of violence." *Harris*, 964 F.2d at 1235–36 (examining uncontested presentence report and guilty plea due to absence of jury instructions); *United States v. Strahl*, 958 F.2d 980, 984 (10th Cir.1992) (examining charging document where guilty plea precluded jury instructions); *United States v. Wood*, 52 F.3d 272, 275 (9th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 217, 133

L.Ed.2d 148 (1995); *Palmer*, 68 F.3d at 58 (citing decisions authorizing inquiry beyond jury instructions and charging papers in cases where convictions without a trial preclude jury instructions as a source of information); *see also United States v. Gacnik*, 50 F.3d 848, 855–56 (10th Cir.1995) (authorizing consideration of charging papers, plea agreement or other statement by the defendant for the record, presentence report adopted by the court, and findings by the sentencing judge).

## II. Assault and Battery on a Police Officer

■ As stated above, in March 1993, Fernandez was convicted at a jury-waived trial of assault and battery on a police officer and of disorderly conduct. Assault and battery on a police officer merits categorical treatment as a crime of violence. *See United States v. Pratt*, 913 F.2d 982, 993 (1st Cir. 1990), *cert. denied*, 498 U.S. 1028, 111 S.Ct. 681, 112 L.Ed.2d 673 (1991) (holding that two prior convictions for assault and battery qualify as crimes of violence under section 4B1.1).

The statute defining the offense of assault and battery on a police officer provides:

> Whoever commits an assault and battery upon ... [any public employee] ... when such person is engaged in the performance of his duties at the time of such assault and battery, ... shall be punished by imprisonment for not less than ninety days nor more than two and one-half years in a house of correction or by a fine of not less than five hundred nor more than five thousand dollars.

Mass.Gen.L. ch. 265, § 13D. In this case, Fernandez was convicted of assault and battery on two Boston police officers, Officer Sean Scannel ("Officer Scannel") and Officer Santos Hernandez ("Officer Hernandez").[6] Trial Transcript at 96.

### A. Statutory Analysis of Assault and Battery on a Police Officer as a Crime of Violence

The First Circuit has held that assault and battery under Massachusetts law is not a

---

**6.** Fernandez was acquitted of assault and battery on Officer William Doran and Officer Chris Connolly. Trial Transcript at 96.

crime of violence per se because the statute "covers two separate crimes—one involving actual (or potential) physical harm and the other involving a non-consensual but unharmful touching." *Harris*, 964 F.2d at 1236; *see* Mass.Gen.L. ch. 265, § 13A; *Commonwealth v. Burke*, 390 Mass. 480, 482–83, 457 N.E.2d 622, 624 (1983). Fernandez suggests that, by analogy, assault and battery on a police officer is not a crime of violence.

Contrary to Fernandez' position, this Court rules that, by definition, assault and battery on a police officer is a crime of violence. The use of physical force, actual or threatened as set forth in section 4B1.2(1)(i), is implicit in the very nature of the offense. Furthermore, the crime of assault and battery on a police officer, by definition, falls within the "otherwise" clause of section 4B1.2(1)(ii). Focusing on the degree of risk, "expressed in terms of the probability of physical harm presented by the mine-run of conduct that falls within the heartland of the statute," assault and battery on a police officer customarily involves a substantial risk of violence. *See De Jesus*, 984 F.2d at 24. As it is reasonable to consider violence "a usual accoutrement" of the crime of assault and battery on a police officer, the conviction qualifies as a predicate offense under U.S.S.G. § 4B1.2(1)(ii). *But see Winter*, 22 F.3d at 21 (holding horse race fixing is not a crime of violence because violence is not a usual accoutrement of the offense).

Bills amending Mass.Gen.L. ch. 265, § 13D illustrate the violent nature of the offense. In its original form, Mass.Gen.L. ch. 265, § 13D extended protection only to police officers and firefighters.[7] 1969 Mass.Acts 359. Over the years, the legislature has amended the statute, expanding its scope to include all public employees.[8] 1990 Mass.Acts 498. The language employed by these amendments strongly suggests that the purpose behind the statute is to protect against violence. *See, e.g.,* 1990 Mass.Acts 498 ("an act providing for the increased protection of pub-

lic employees . . . ."); 1985 Mass.Acts 555 (described as a "bill extending protection to employees of the department of social services who suffer assault and battery in the performance of their duties"); 1985 Mass. Acts 153 (emergency bill) (stating purpose "to increase immediately the security and safety of certain public transportation employees in providing essential services to the public"). The language in these bills supports this Court's position that assault and battery on a police officer is, by definition, a crime of violence.

The First Circuit appears to agree, notwithstanding its decision in *Harris* which involved assault and battery generally. In *Pratt,* the court held assault and battery on a police officer to be a crime of violence, without inquiring beyond the statute. *See Pratt,* 913 F.2d at 993 (noting that the list of crimes of violence in the U.S.S.G. Commentary is not exhaustive). In addition, *United States v. Santiago,* 83 F.3d 20, 26–27 (1st Cir.1996), treats assault and battery on a police officer as a crime of violence.

Furthermore, in contexts other than section 4B1.1, courts have held assault and battery on a police officer to be a crime of violence. *See United States v. Tracy,* 36 F.3d 187, 199 (1st Cir.1994) (affirming district court's decision to treat assault and battery on a police officer as a "violent felony" under 18 U.S.C. § 924[e][1]); *J.K. v. Commonwealth,* 28 Mass.App.Ct. 761, 763, 556 N.E.2d 107, 108 (1990) (characterizing assault and battery on a police officer as violent); *cf., United States v. Coyne,* 800 F.Supp. 1018, 1019 (D.Mass.1992) (Collings, M.J.) (stating that assault and battery on a police officer would be a crime of violence as described in 18 U.S.C. § 3142[f][1][A] if federal jurisdiction existed).

In addition, the fact that assault and battery on a police officer carries a more severe penalty than that of general assault and bat-

---

**7.** The original statute, 1969 Mass.Acts 359, states:

Whoever commits an assault and battery upon a police officer or fire fighter engaged in the performance of his duty shall be punished by imprisonment for not less than ten days nor

more than two and one half years in a house of correction or by a fine of not less than one hundred dollars nor more than five hundred dollars.

**8.** *See* Mass.Gen.L. ch. 265, § 13D, *supra* at 11.

tery may indicate that assault and battery on a police officer is a more serious offense than mere assault and battery.[9] Assault and battery on a public employee, specifically a police officer, is more than an assault on an individual; it is an assault on the public order, an act which entails an inherent potential for violence. Disrupting the peace and public order creates a substantial danger of a violent outbreak.

## B. Beyond the Statute: An Inquiry into Court Documents

■ Even if the statutory definition of the offense does not implicate assault and battery on a police officer as a crime of violence, inquiry beyond the statute into court documents also demonstrates that Fernandez' prior conviction is a crime of violence. Looking first to the charging papers, the count charging a violation of Mass.Gen.L. ch. 265, § 13D employs a boilerplate phrase—"did assault and beat"—which is prescribed in Mass.Gen.L. ch. 277, § 79 as the proper form for alleging an assault and battery. Criminal Complaint No. 9205–CR–2375 at 1. This phrase does not intimate the crime as one of violence. *See Winter*, 22 F.3d at 21. The complaint, however, does contain a charge of disorderly conduct, described as "engaging in fighting or threatening, or in violent or tumultuous behavior."[10] Criminal Complaint at 1. Read in the context of the disorderly conduct charge, the charge of assault and battery on a police officer carries a substantial risk of violent outbreak.

Second, the testimony of Officer Scannel at the jury-waived trial in the Boston Municipal Court also demonstrates that the charged conduct was violent. For example, Officer Scannel testified that Fernandez "stomped on my hand, my right hand" resulting in a "soft tissue injury to the knuckle, middle knuckle." Trial Transcript at 17–18. After being evaluated at Massachusetts General Hospital and Braintree Hospital, Officer Scannel was "out for a month and a half" and underwent physical therapy. Trial Transcript at 18.

Fernandez objects to the use of a trial transcript on the ground that such factfinding practices run counter to the spirit of the confined inquiry of *Taylor* and its progeny. This Court notes that, in a recent decision, the First Circuit allowed examination of an uncontested presentence report and a guilty plea in the absence of jury instructions. *Harris*, 964 F.2d at 1236–37.[11]

Fernandez objects to the application of *Harris* to his conviction on two additional grounds. First, Fernandez claims *Harris* is limited to cases involving a guilty plea and should not apply to his conviction which resulted from a jury-waived trial. Second, unlike *Harris*, which relied upon the *uncontested* description in a presentence report, Fernandez disputed Officer Scannel's version in his own testimony during the Boston Municipal Court trial. Contrary to Officer Scannel's testimony, Fernandez denied, in his trial testimony, ever stomping on Officer Scannel's hands.[12] Trial Transcript at 63.

■ Fernandez' objections are groundless. First, whether a conviction emerges from a guilty plea or a jury-waived trial is irrelevant. What matters is the absence or

---

**9.** Violations of Mass.Gen.L. ch. 265, § 13A are punishable "by imprisonment for not more than two and one half years in a house of correction or by a fine of not more than five hundred dollars." Violations of Mass.Gen.L. ch. 265, § 13D, however, are punishable by "imprisonment for not less than ninety days nor more than two and one-half years in a house of correction or by a fine of not less than five hundred nor more than five thousand dollars."

**10.** Fernandez was convicted for this charge. Trial Transcript at 96.

**11.** Furthermore, in *United States v. Sweeten*, 933 F.2d 765, 769–70 (9th Cir.1991), the court held

that a sentencing court should not exclude in its inquiry "documentation or judicially noticeable facts that clearly establish that a conviction is a predicate offense for enhancement purposes." Thus, this Court allows inquiry into a trial transcript which is an "easily produced and evaluated court document[]." *Spell*, 44 F.3d at 939.

**12.** Page 63 of the trial transcript reads:

Q: Did you stomp on [Officer Scannel's] hand?
[Fernandez]: No.
Q: Are you sure?
[Fernandez]: Positive.
Q: How about Officer Hernandez? Did you do anything to him?
[Fernandez]: No.

presence of jury instructions. *Palmer*, 68 F.3d at 58. Here, where a jury-waived trial necessarily omits jury instructions, it is appropriate to inquire into the trial transcript. *See Harris*, 964 F.2d at 1236–37 (examining uncontested pre-sentence report and guilty plea due to absence of jury instructions); *Palmer*, 68 F.3d at 58 (citing decisions authorizing inquiry beyond jury instructions and charging papers in cases where convictions without a trial preclude jury instructions as a source of information). Although Fernandez' conviction did not spring from a guilty plea, the absence of jury instructions due to a jury-waived trial still creates the need to look beyond the jury instructions and charging papers, as in *Harris*.

Here, this Court did not rely on the pre-sentence report description but looked in addition to the trial transcript.[13] Nor is the contradictory testimony to which Fernandez points in the transcript problematic.[14] Justice Hershfang found Fernandez guilty of two counts of assault and battery on Officer Hernandez and Officer Scannel, and of one count of disorderly conduct. Trial Transcript at 96. The fact that the justice presiding convicted Fernandez of assault and battery on a police officer is a strong indication that the presiding justice believed beyond a reasonable doubt the testimony of Officer Scannel over that of Fernandez. Without the hand-stomping testimony, no other testimony in the transcript exists upon which to establish Fernandez' guilt for the offense of assault and battery on a police officer. Despite the contradictions in the testimony, the trial could produce a guilty verdict only if the justice presiding believed Officer Scannel's testimony beyond a reasonable doubt. Thus, this Court infers that the guilty verdict sprang from the hand-stomping testimony.

The testimony regarding Fernandez' violent conduct therefore pulls his conviction within the "crime of violence" ambit. *Santiago*, 83 F.3d at 27 n. 4 (stating that "assault

and battery is no less a crime of violence because the assailant stomps his victim [with work boots] rather than assaulting him in some more traditional manner"); *cf. Commonwealth v. Davis*, 10 Mass.App.Ct. 190, 193–94, 406 N.E.2d 417, 420 (1980) (stating that, under Massachusetts law, a shod foot is a dangerous weapon when used to kick somebody).

### III. Conclusion

For the foregoing reasons, this Court held that Fernandez' prior conviction for assault and battery on a police officer constituted a crime of violence as a categorical matter of statutory interpretation, thus qualifying as a predicate offense under the career offender provisions of the federal sentencing guidelines. In addition, this Court's exhaustive review of the Boston Municipal Court trial record demonstrated as matter of fact the violent nature of the predicate offense. In accordance with this holding, this Court therefore sentenced Fernandez to 151 months in the custody of Bureau of Prisons to be followed by three years of supervised release with special conditions.

---

**13.** Because the transcript of the jury-waived trial proceeding is a sufficient basis to find Fernandez' prior conviction to be a crime of violence, this Court need not address the question as to whether it would be able to rely on the presentence report's contested description of Fernandez' conduct underlying the offense of assault and battery on a police officer. *But see United*

*States v. Hines*, 802 F.Supp. 559, 568 (D.Mass. 1992) (allowing inquiry into the current presentence report to determine the violent nature of the conviction).

**14.** *See* note 12, *supra*.