UNITED STATES of America, Appellee,

v.

Scott PALMER, Defendant–Appellant.

No. 1517, Docket 94–1501.

United States Court of Appeals,
Second Circuit.

Argued May 18, 1995.

Decided Oct. 16, 1995.

As Amended on Rehearing Dec. 27, 1995.

Anthony E. Kaplan, Assistant United States Attorney for the District of Connecticut, New Haven, Connecticut (Christopher F. Droney, United States Attorney, John H. Durham, Deputy United States Attorney, New Haven, Connecticut, of counsel), for Appellee.

Richard S. Cramer, Wethersfield, Connecticut, for Defendant–Appellant.

Before: LUMBARD, ALTIMARI, and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Defendant-appellant Scott Palmer appeals from the sentence imposed by a judgment entered September 15, 1994 in the United States District Court for the District of Connecticut, T.F. Gilroy Daly, *Judge,* after a jury found Palmer guilty of knowingly possessing a firearm and ammunition as a felon in violation of 18 U.S.C. § 922(g)(1). Palmer had previously pleaded *nolo contendere* to a Connecticut state criminal charge of intimidation based on bigotry or bias, a class D felony, in violation of Conn.Gen.Stat. § 53a–181b.[1] Palmer contends on appeal that because his Connecticut offense did not constitute a "crime of violence" within the meaning of USSG § 4B1.2(1), the 63–month sentence imposed upon him as a result of the USSG § 2K2.1(a)(4)(A) enhancement for committing a "crime of violence" is unlawful.

We affirm.

## Background

Palmer's conviction arises out of an investigation conducted by federal, state, and local authorities of members of the Klu Klux Klan ("KKK") and skinhead groups in Connecticut due to the rising incidence of hate crimes committed in the Wallingford, Connecticut area. In the course of this investigation, authorities arrested Palmer, allegedly the "Great Titan" of the KKK, several times for crimes directed at various minority groups. On September 5, 1993, he was arrested for the violation of § 53a–181b that is at issue on this appeal. He was convicted of that crime on a plea of *nolo contendere,*[2] and of two misdemeanors to which he pled guilty, on January 13, 1994. He was given a four-year suspended sentence, required to serve three years probation, and fined $1,200.

With respect to the § 53a–181b violation, the prosecuting attorney stated at the January 13, 1994 plea proceeding that on

> August fourteenth nineteen ninety-three, Officers received a report and assist was
>
> . . . .
>
> (c) INTIMIDATION BASED ON BIGOTRY or bias is a Class D Felony.

1. Section 53a–181b provides in pertinent part:

 (a) A person is guilty of INTIMIDATION BASED ON BIGOTRY or bias if such person maliciously, and with specific intent to intimidate or harass another person because of such other person's race, religion, ethnicity or sexual orientation, does any of the following: (1) Causes physical contact with such other person; (2) damages, destroys or defaces any real or personal property of such other person; or (3) threatens, by word or act, to do an act described in subdivision (1) or (2), if there is reasonable cause to believe that an act decribed in subdivision (1) or (2) will occur.

2. In *United States v. Arnold,* 58 F.3d 1117 (6th Cir.1995), the Sixth Circuit stated that a sentencing court may, in considering application of a sentencing enhancement for the prior commission of a crime of violence, consider conduct charged in an indictment to which the defendant pleaded *nolo contendere* because such a plea " 'has a similar legal effect as pleading guilty.' " *Id.* at 1124 n. 5 (citing Black's Law Dictionary 1049 (6th ed. 1990)).

dispatched to Choices cafe located at eight North Turnpike Road in the town of Wallingford. On arrival they were informed by the complainant that this defendant along with a co-defendant had come into a parking lot close to the closing of the bar. Along with some exchanges of profanity and identifying themselves as members of the Ku Klux Klan and a Natzi [sic] group the defendant punched the complainant in the face and the back of the head and the complainant in this matter was assaulted simply because this defendant had placed him in a category based on his sexual orientation which is covered under the statute.

The court then inquired whether Palmer had "heard the [foregoing] facts that were read by the prosecutor" and agreed that he was entering his plea of *nolo contendere* thereto, and Palmer answered affirmatively. The court thereupon found "the exist[ence] of [a] factual basis for the plea" of *nolo contendere*, and accepted the plea.

Palmer's presentence report ("PSR") in this case also addressed the state court conviction at issue on this appeal. According to the PSR, on August 14, 1993, Palmer accosted a patron at the Choices Cafe in Wallingford, Connecticut, identified himself as a member of the KKK and a Nazi group, and punched that patron in the face and the back of the head. Palmer then reportedly stated that he would return the next day to "smash some [expletive deleted] heads." The PSR noted that when Palmer was interviewed by police officers later that evening, he claimed to have acted in self defense. In a sentencing memorandum submitted to the district court, Palmer conceded that he had on this occasion "made derogatory and inflammatory remarks towards some people whom he believed were homosexuals," but repeated the assertion that he had acted in self defense, and stated that in any event he had inflicted no serious injury upon anyone.

Less than one week after Palmer's conviction on January 13, 1994, a cooperating witness recorded a telephone conversation between Palmer and himself. In that conversation, Palmer indicated that he planned to retain possession of an Intertec Model TEC–9 9mm semiautomatic pistol that he owned, even though he was aware that such retention would violate conditions of the probation for his felony conviction. The cooperating witness observed the TEC–9 pistol at Palmer's house later that same day. A federal search warrant was executed on January 21, 1994, and authorities seized the TEC–9 pistol along with 9mm ammunition. Palmer was charged under 18 U.S.C. § 922(g)(1) in two counts with knowingly possessing firearms and ammunition in interstate commerce as a felon. After a two-day trial, the jury returned a verdict on June 21, 1994 finding Palmer guilty under both counts of the indictment.

At sentencing on September 9, 1994, the district court found that the "Connecticut conviction for intimidation based on bigotry or bias is a crime of violence as defined in Guideline section 4B1[.]2." Therefore, Palmer's base offense level was enhanced from 12, the unenhanced level under USSG § 2K2.1(a)(7), to 20 pursuant to § 2K2.1(a)(4)(A), which applies if a defendant has "one prior felony conviction of ... a crime of violence." The district court further enhanced Palmer's offense level two points for obstruction of justice, and assigned Palmer to a criminal history category of III. This yielded a sentencing range of 51–63 months, and the court sentenced Palmer to 63 months incarceration, a $7,500 fine, three years of supervised release, and a $100 special assessment.

This appeal followed.

### Discussion

■ Palmer argues that the district court incorrectly applied the Guidelines, resulting in an increase in his base offense level from 12 to 20. *See* USSG §§ 2K2.1(a)(4)(A), (a)(7). We review a district court's interpretation and application of the Sentencing Guidelines *de novo. See United States v. Studley,* 47 F.3d 569, 573 (2d Cir.1995); *United States v. Loeb,* 45 F.3d 719, 722 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2017, 131 L.Ed.2d 1015 (1995).

USSG § 2K2.1, comment. n. 5 cross-references from § 2K2.1(a)(4)(A) to § 4B1.2(1) for the definition of "crime of violence." Section 4B1.2(1) provides:

> The term "crime of violence" means any offense under federal or state law punishable by imprisonment for a term exceeding one year that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.[3]

The Supreme Court considered a closely analogous question in *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). That case involved 18 U.S.C. § 924(e)(1), which provides a sentence enhancement for violation of 18 U.S.C. § 922(g) by "a person who ... has three previous convictions ... for a *violent felony* or a serious drug offense, or both." § 924(e)(1) (emphasis added). The term "violent felony" is in turn defined by § 924(e)(2)(B) in terms that are substantially identical to the definition of "crime of violence" in USSG § 4B1.2(1). *See* USSG App. C, amendment no. 268 ("The definition of crime of violence used in [§ 4B1.2(1) ] is derived from 18 U.S.C. § 924(e)."). Thus, *Taylor* provides highly germane authority for the resolution of the issue presented by this appeal. *See United States v. Winter*, 22 F.3d 15, 18 n. 3 (1st Cir.1994) ("Given the substantial similarity between the Armed Career Criminal Act's definition of 'violent felony,' 18 U.S.C. § 924(e)(2)(B), and the Sentencing Commission's definition of 'crime of violence,' U.S.S.G. § 4B1.2(1), authority interpreting one phrase frequently is found to be persuasive in interpreting the other phrase.").

The precise issue presented for decision in *Taylor* was the meaning of the term "burglary" in § 924(e)(2)(B)(ii), and the Court held that "an offense constitutes 'burglary' for purposes of a § 924(e) sentence enhancement if either its statutory definition substantially corresponds to 'generic' burglary, or the *charging paper and jury instructions* actually required the jury to find all the elements of generic burglary in order to convict the defendant." *Taylor*, 495 U.S. at 602, 110 S.Ct. at 2160 (emphasis added). In reaching this conclusion, the court opted for a "formal categorical approach" to the issue, *id.* at 600, 110 S.Ct. at 2159, that "requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense," *id.* at 602, 110 S.Ct. at 2160, but allows "the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of generic burglary," *id.*, and thus to consult "the indictment or information and jury instructions." *Id.* The Court emphasized the "practical difficulties and potential unfairness" of "an approach that would require the sentencing court to engage in an elaborate factfinding process regarding the defendant's prior offenses." *Id.* at 601, 110 S.Ct. at 2159.

■ In other words, if any conviction under a statute must necessarily be imposed for conduct that constitutes a "violent felony" (in the case of 18 U.S.C. § 924(e)(2)(B)) or a "crime of violence" (in the case of USSG § 4B1.2(1)) because of the terms of the statute, then the fact of conviction, standing alone, satisfies § 924(e)(2)(B) and § 4B1.2(1). *See United States v. Brown*, 52 F.3d 415, 426 (2d Cir.1995); *United States v. Fredette*, 15 F.3d 272, 277 (2d Cir.), *cert. denied*, — U.S. —, —, 114 S.Ct. 2119, 2180, 128 L.Ed.2d 677, 899 (1994). If, on the other hand, the statute reaches both conduct that satisfies these definitions and conduct that does not,

---

**3.** The commentary to § 4B1.2(1) expands upon this definition, stating that:

> "Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included where (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth *(i.e., expressly charged) in the count of which the defendant was convicted* involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another. Under this section, the conduct of which the defendant was convicted is the focus of inquiry.

USSG § 4B1.2, comment. (n. 2) (emphasis added).

then the charging instrument and jury instructions may be consulted to determine whether the prior conviction was imposed for conduct that qualifies for enhancement purposes. *See Winter*, 22 F.3d at 18 ("if the statutory description ... blankets both violent and non-violent crimes, a court may peek beneath the coverlet").

■ In this case, the district court determined that the fact of Palmer's conviction under Conn.Gen.Stat. § 53a–181b sufficed to establish that he had committed a "crime of violence" within the meaning of USSG § 4B1.2(1), concluding that "the actual wording of the statute demonstrates that it has [the required] elements." We disagree with this conclusion. While § 53a–181b clearly covers conduct that entails "the use, attempted use, or threatened use of physical force against the person of another" within the meaning of § 4B1.2(1)(i), it also covers conduct that falls outside that definition, because it addresses harassment as well as intimidation, and damage to "real or personal property" as well as "physical contact." *See supra* note 1. Accordingly, the sentencing enhancement imposed by the district court cannot be sustained on the basis of that court's rationale, and we must consider whether the alternative approach posed by *Taylor* may provide a basis for enhancement in this case. *See Citrus Mktg. Bd. of Israel v. J. Lauritzen A/S*, 943 F.2d 220, 223 (2d Cir.1991) ("[W]e may affirm on any basis for which there is a record sufficient to permit conclusions of law, including grounds upon which the district court did not rely....") (collecting cases).

■ The sources mentioned in *Taylor*, the indictment or information and jury instructions, 495 U.S. at 602, 110 S.Ct. at 2160, are not helpful in this inquiry. The criminal information in Palmer's state court prosecution for violation of § 53a–181b merely stated that Palmer "did commit the crime of intimidation based on bigotry and bias ... in viola-

tion of General Statute No. 53a–181b," without elaboration.[4] And because of Palmer's plea of *nolo contendere*, there were no jury instructions.

The United States contends, however, that, consistent with *Taylor*'s admonition to avoid "an elaborate factfinding process regarding the defendant's prior offenses," 495 U.S. at 601, 110 S.Ct. at 2159, a sentencing court may look to the facts as presented in a presentence report or a plea proceeding to determine whether an underlying felony constitutes a crime of violence for purposes of § 4B1.2(1)(ii). As previously summarized, the PSR in this case recited the facts regarding the encounter that led to Palmer's conviction under § 53a–181b, including Palmer's claim that he had acted in self defense. The plea proceeding in state court on the § 53a–181b conviction also included a brief recital of those facts, without any reference to Palmer's assertion regarding self defense.

The government cites three cases as authority for us to look to the PSR presented to the district court and plea proceeding in state court as a basis to determine that Palmer committed a "crime of violence" within the meaning of § 4B1.2(1). *See United States v. Harris*, 964 F.2d 1234, 1236 (1st Cir.1992) (authorizing reference to plea agreement or transcript and presentence report); *United States v. Bregnard*, 951 F.2d 457, 460 (1st Cir.1991) (utilizing uncontested presentence report), *cert. denied*, 504 U.S. 973, 112 S.Ct. 2939, 119 L.Ed.2d 564 (1992); *United States v. Gallman*, 907 F.2d 639, 645 n. 7 (7th Cir.1990) (authorizing reference to a plea agreement or transcript in the case of a guilty plea), *cert. denied*, 499 U.S. 908, 111 S.Ct. 1110, 113 L.Ed.2d 219 (1991).

Of course, these decisions from other circuits have considerably less precedential force than *Taylor* in our assessment of the issue presented by this appeal. They must be viewed, moreover, in the context of pertinent amendments to the Sentencing Guide-

---

4. We note that Connecticut prosecutors are not confined to providing in a criminal information a mere identification of the statute alleged to have been violated. *See* Conn.Crim.R.Super.Ct. § 618 ("It may be alleged in a single count that the means by which the defendant committed the offense are unknown or that he committed the offense by one or more specified means."); *id.*

§ 625 ("Whenever the information charges the offense only by referring to the statute which is alleged to have been violated, the prosecuting authority, upon written request of the defendant, shall as of course amend the information by adding or annexing thereto a statement of the essential facts claimed to constitute the offense charged.").

lines, and subsequent case law developments prompted in large part by these amendments.

Amendment no. 268, effective November 1, 1989, conformed the definition of "crime of violence" in USSG § 4B1.2(1) to the definition of "violent felony" in 18 U.S.C. § 924(e)(2)(B), and amended the application notes to § 4B1.2 to focus more specifically upon the charging instrument in determining whether a defendant's prior conviction resulted from the commission of a "crime of violence." This was accomplished by substituting in the commentary to § 4B1.2(1) the language "conduct set forth in the count of which the defendant was convicted" for the prior formulation: "the conduct for which the defendant was specifically convicted."

Two years later, amendment no. 433 fortified this new emphasis upon the charging instrument by adding to application note 2 to § 4B1.2 the parenthetical "(*i.e.*, expressly charged)" after "set forth" in the foregoing quotation, and a new concluding sentence that focuses the inquiry upon "the conduct of which the defendant was convicted," with the result that application note 2 now reads as set forth *supra* at note 3.

The first sentence of this application note specifies enumerated crimes which constitute "crime[s] of violence" within the meaning of § 4B1.2(1). *Taylor* addressed an enumerated crime; the issue in that case was whether the defendant's previous conviction was for a "burglary." The second sentence provides a generic description which must be consulted to determine whether unenumerated crimes fall within the § 4B1.2(1) definition. Courts are bound by this commentary because "Amendment 433 does not run afoul of the Constitution or a federal statute, and it is not 'plainly erroneous or inconsistent' with § 4B1.2." *Stinson v. United States,* ____ U.S. ____, ____, 113 S.Ct. 1913, 1920, 123 L.Ed.2d 598 (1993) (quoting *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)).

In the aftermath of *Taylor* and these amendments to the § 4B1.2 commentary, courts have emphasized the limitations upon a sentencing court's inquiry to establish that a defendant has previously been convicted of a "crime of violence." For instance, *Gallman,* the Seventh Circuit case invoked by the government in support of an investigation of a plea agreement or transcript in furtherance of a "crime of violence" inquiry, has been circumscribed by *United States v. Lee,* 22 F.3d 736 (7th Cir.1994), which counsels that: "This Court's inquiry ... is limited to an analysis of the conduct expressly charged in the count of which a defendant was convicted." *Id.* at 738. In so ruling, the court explicitly repudiated a prior Seventh Circuit precedent, *United States v. Terry,* 900 F.2d 1039, 1042 (7th Cir.1990), that was deemed to authorize "an inquiry into the facts underlying a prior conviction ... when the offense is not a *per se* crime of violence," *Lee,* 22 F.3d at 738 n. 4, concluding that *Terry* had "relied on a now superseded version of U.S.S.G. § 4B1.2 and commentary." *Lee,* 22 F.3d at 738 n. 4.

The law of other circuits has undergone a comparable evolution. In *United States v. Goodman,* 914 F.2d 696 (5th Cir.1990), the Fifth Circuit initially ruled that "this court is permitted to look beyond the face of the indictment and consider all facts disclosed by the record." *Id.* at 699. That court subsequently overruled *Goodman,* however, in *United States v. Fitzhugh,* 954 F.2d 253 (5th Cir.1992), stating that the 1989 amendment to the Guidelines commentary had established that "the [Sentencing] Commission has repudiated *Goodman* and other cases which held that a sentencing court can look beyond the face of the indictment in considering this issue." *Id.* at 254.

The Sixth Circuit recently ruled, in *Arnold,* that a prior decision of that court, *United States v. Maddalena,* 893 F.2d 815 (6th Cir.1989), which *Arnold* construed to recognize "the authority of a sentencing court to examine the underlying facts of a defendant's prior conviction," *Arnold,* 58 F.3d at 1123, had been invalidated by "the plain intent of the Sentencing Commission ... to limit a sentencing court's factual inquiry ... to those facts charged in the indictment, and to allow a sentencing court to consider conduct expressly charged ... but not any other conduct that might be associated with the offense." *Id.* (third omission in original, internal quotations and citations omitted). The court concluded that "the district court's reliance on the presentence investigation report was outside the scope of

its discretion," *id.* at 1122, and that "we will no longer follow the view that a sentencing court has broad discretion to consider the underlying facts of a defendant's prior conviction." *Id.* at 1124.

In *United States v. Joshua,* 976 F.2d 844 (3d Cir.1992), the Third Circuit disclaimed *United States v. John,* 936 F.2d 764 (3d Cir.1991), which it deemed to authorize "looking beyond the facts charged in the indictment and through to the defendant's underlying conduct." *Joshua,* 976 F.2d at 852. *Joshua* held that in light of the amended Guidelines commentary, "a sentencing court should look solely to the conduct alleged in the count of the indictment charging the offense of conviction in order to determine whether that offense is a crime of violence...." *Id.* at 856; *see also United States v. Neal,* 27 F.3d 90, 93 (4th Cir.1994) (per curiam) ("If the statutory definition of the offense does not use [the enumerated] terms, then the trial court may look to the conduct described in the indictment against the defendant (but no further) in determining if the offense presented a serious potential risk of physical injury to another."); *United States v. Johnson,* 953 F.2d 110, 113 (4th Cir.1991) ("[T]he revised commentary appears to disfavor a wideranging inquiry into the specific circumstances surrounding a conviction.").

A few cases would authorize some inquiry beyond the charging instrument and jury instructions concerning a prior conviction, especially in the case of convictions without a trial (thus precluding jury instructions as a source of information). In *United States v. Wood,* 52 F.3d 272 (9th Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 217, 133 L.Ed.2d 148 (1995), for example, the Ninth Circuit opined that "sentencing courts may consider the statutory definition of the crime, any conduct charged in the indictment or information, the defendant's guilty plea or plea agreement, and any jury instructions." *Id.* at 275. Similarly, *United States v. Gacnik,* 50 F.3d 848 (10th Cir.1995), authorizes consideration of "the charging papers, judgment of conviction, plea agreement or other statement by the defendant for the record, presentence report adopted by the court, and findings by the sentencing judge." *Id.* at

856; *see also United States v. Spell,* 44 F.3d 936, 939 (11th Cir.1995) (per curiam) ("The inquiry is limited to examining easily produced and evaluated court documents, including the judgment of conviction, charging papers, plea agreement, presentence report adopted by the court, and the findings of a sentencing judge.") (citing *United States v. Smith,* 10 F.3d 724, 734 (10th Cir.1993) (per curiam)). *Spell* also emphasized, invoking *Taylor,* that when a conviction results from a guilty plea, it is important to ascertain precisely the charge(s) as to which the defendant conceded guilt in order to determine "the conduct of which the defendant was convicted" within the meaning of § 4B1.2, comment. (n. 2). *See Spell,* 44 F.3d at 940 (citing *Taylor,* 495 U.S. at 601–02, 110 S.Ct. at 2159–60).

The unelaborated references to presentence reports "adopted by the court" in *Gacnik* and *Spell* echo the First Circuit opinions in *Bregnard* and *Harris,* cited by the government in support of resort to the PSR in this case. In *Bregnard,* however, the defendant "did not object to the factual narrative of his prior convictions, nor ha[d] he asserted that it was erroneous for the district court to rely on the presentence report." 951 F.2d at 460. As to *Harris,* the First Circuit has subsequently declined "to consider the extent to which [*Harris*] does or does not permit resort to the PSI Report's depiction of the underlying events and/or the defendant's own version of the facts as outlined in the Report's addendum." *United States v. De Jesus,* 984 F.2d 21, 23 n. 5 (1st Cir.1993); *see also United States v. Piper,* 35 F.3d 611, 619 (1st Cir.1994) ("[W]e look to the statutory definition of the offense in question, as opposed to the particular facts underlying the conviction."), *cert. denied,* — U.S. —, 115 S.Ct. 1118, 130 L.Ed.2d 1082 (1995); *Winter,* 22 F.3d at 20 & n. 8 (declaring that "*Taylor* demands that a court ... consult a limited array of materials—principally the indictment and jury instructions—in determining if the offense can be classified as a crime of violence," but noting that presentence reports had been consulted in *Harris* and *Bregnard* when guilty pleas precluded any enlightenment from jury instructions).

We have held that a presentence report regarding the *prior* conviction for commission of a "crime of violence" was properly consulted by a sentencing district court "in concluding that [the defendant] was an

armed career criminal," *Brown,* 52 F.3d at 425, even though "a certified copy of [the defendant's prior] conviction may have been more desirable." *Id.* We believe, however, that a current presentence report prepared *for a sentencing court* presented with the enhancement issue would ordinarily be a surrogate for the "elaborate factfinding process regarding the defendant's prior offenses" that was criticized in *Taylor,* 495 U.S. at 601, 110 S.Ct. at 2159, and that employment of the PSR in this case would thus be at odds with both *Taylor,* the applicable Guidelines commentary, and the vast majority of the pertinent circuit court precedents.

Our view is different, however, with respect to the plea proceeding in state court. *Taylor*'s focus upon the charging instrument and jury instructions is surely dispositive with respect to a prior conviction that results from a jury trial. When, as here, the prior conviction results from a guilty plea, however, we agree that recourse may be had to other "easily produced and evaluated court documents," *Spell,* 44 F.3d at 939, that clearly establish "the conduct of which the defendant was convicted," § 4B1.2 comment (n. 2), *supra* note 3.

In this case, the plea proceeding includes a lucid description of the conduct for which Palmer was convicted, that conduct manifestly constitutes a "crime of violence" within the meaning of § 4B1.2(1), and Palmer's on-the-record agreement to the description of his conduct proffered by the prosecuting attorney results in the functional equivalent of a plea agreement with respect to that conduct. *See Arnold,* 58 F.3d at 1124 ("[W]e note that because defendant entered a plea in the prior action, it is appropriate for the district court to consider defendant's plea agreement.") (citing *United States v. Kaplansky,* 42 F.3d 320, 322 (6th Cir.1994) (in banc). We accordingly conclude that Palmer's sentence was properly enhanced pursuant to § 2K2.1(a)(4)(A) for a "prior felony conviction of . . . a crime of violence."

### Conclusion

The judgment of the district court imposing Palmer's sentence is affirmed.