## UNITED STATES

v.

## Victor MADERA.

## Criminal No. 03:04 cr 316(CFD).

United States District Court,
D. Connecticut.

March 5, 2007.

---

5. See, Plaintiffs' Opposition (docket No. **30**).

See, also, 2006 WL 322470.

---

Brian P. Leaming, Ronald Scott Apter, U.S. Attorney's Office, Hartford, CT, Kevin J. O'Connor, U.S. Attorney's Office, New Haven, CT, for United States.

Terence S. Ward, Federal Public Defender's Office, Hartford, CT, for Victor Madera.

### RULING ON APPLICATION OF ARMED CAREER CRIMINAL ACT

CHRISTOPHER F. DRONEY, District Judge.

On April 26, 2006, Victor Madera pled guilty to a one count indictment charging him with possession of ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). The government contends that the Armed Career Criminal Act applies to Madera, and Madera contests this conclusion. In anticipation of sentencing, the Court rules as follows as to this issue.

### I. The Armed Career Criminal Act

The Armed Career Criminal Act ("ACCA") provides that:

a person who violates section 922(g) of this title and has three previous convictions ... for a violent felony or a serious drug offense, or both, committed on occasions different from one another ... shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

18 U.S.C. § 924(e)(1). As used in the ACCA:

(A) the term "serious drug offense" means ... an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law;

(B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year ... that (i) has

as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2).

The Supreme Court of the United States has explained that "the ACCA generally prohibits the later court from delving into particular facts disclosed by the record of conviction, thus leaving the court normally to look only to the fact of conviction and the statutory definition of the prior offense ... [A]n exception to this 'categorical approach' [exists] only for a narrow range of cases where a jury ... was actually required to find all the elements of" a predicate offense. *Shepard v. United States,* 544 U.S. 13, 17, 24, 125 S.Ct. 1254, 1257–1258, 1262, 161 L.Ed.2d 205 (2005) (internal quotation marks omitted). "[E]nquiry under the ACCA to determine whether a plea of guilty ... necessarily admitted elements of [an ACCA predicate offense] is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard,* 544 U.S. at 26, 125 S.Ct. 1254 (2005).

### II. Madera's Criminal History

Madera has a lengthy Connecticut state criminal history including six possible ACCA predicate offenses: (1) on December 22, 1991, he was convicted of escape; (2) on March 13, 1992, he was convicted of possession of narcotics with intent to sell; (3) on January 9, 1997, he was convicted of possession of narcotics with intent to sell; (4) on August 8, 1997, he was convicted of sale of narcotics; (5) on May 12, 1999, he

was convicted of escape; and (6) on September 18, 2000, he was convicted of possession of narcotics with intent to sell. However, the government has not met its burden of proving that at least three of these were violent felonies or serious drug offenses as defined in the ACCA. Instead, the Court finds that only two of these offenses "necessarily" involved facts equating to a violent felony or a serious drug offense.

### A. Madera's ACCA Predicate Offenses

■ First, the Court finds that Madera's 1991 escape conviction is an ACCA predicate. The Courts have consistently held that escape is a violent felony. *See, e.g., Canada v. Gonzales*, 448 F.3d 560, 570 (2d Cir.2006) (noting that "the courts have regularly found that the crime of prison escape involves the inherent risk of violence, even if the escapee is able to flee the prison without detection"); *United States v. Jackson*, 301 F.3d 59, 63 (2d Cir.2002) (holding that escape, even by peacefully walking away from a work site, is a crime of violence). Thus, Madera's escape conviction was for a violent felony.

■ Second, the Court finds that Madera's August 1997 conviction for sale of heroin is an ACCA predicate. Madera argues that this was not a "serious drug offense" because he was only an accessory. This argument fails for two reasons. Under Connecticut law, an accessory may be prosecuted and punished as a principal:

> A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender.

Conn. Gen.Stat. § 53a–8. Also, because the ACCA includes offenses "*involving* manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance," 18 U.S.C. 924(e)(2)(A) (emphasis added), aiding and abetting convictions have been held to be serious drug offenses. *See, e.g., United States v. Groce*, 999 F.2d 1189, 1191–92 (7th Cir.1993) (holding that conviction of aiding and abetting commission of predicate felony is itself predicate felony conviction for purposes of ACCA because aider and abettor is treated the same as principal for criminal punishment purposes); *United States v. Presley*, 52 F.3d 64, 69 (4th Cir.1995) (same); *United States v. Smith*, 33 Fed.Appx. 462, 466 (10th Cir. April 12, 2002) (ACCA "does not distinguish between principals and accessories."). *Cf. United States v. King*, 325 F.3d 110, 113 (2d Cir.2003) ("the word 'involving' itself suggests that the subsection [defining serious drug offenses] should be read expansively"). Accordingly, Madera's conviction for accessory to the sale of heroin is a serious drug offense under the ACCA.

### B. Madera's Non–ACCA Predicate Convictions

Three of Madera's other relevant convictions are for possession of narcotics with intent to sell or sale of narcotics in violation of Connecticut General Statutes § 21a–277(a). As described below, the Court concludes that this section proscribes both conduct which does and which does not constitute a "serious drug offense" as defined in 18 U.S.C. § 924(e)(2)(A). Under the "modified categorical approach" endorsed by *Shepard*, the government is required to submit records showing that Madera's convictions necessarily involved facts equating to a serious drug offense. The government has not presented such information.

### 1. Madera's Three Unspecified Narcotics Convictions

■ On March 13, 1992, Madera was convicted of possession of narcotics with intent to sell in violation of Connecticut General Statute § 21a–277(a). The Court has been provided with a certified copy of the information which charged him with this offense, and a report of the defendant's arrest. However, the information does not identify the substance Madera is accused of possessing. The arrest report also fails to identify the substance, and even if it did, *Shepard* would bar this Court from considering such evidence.[1] No transcript of the guilty plea proceedings has been presented. Without additional information, the Court cannot determine the substance involved in Madera's 1992 conviction.

■ On January 9, 1997, Madera entered an *Alford* plea to a charge of possession of narcotics with intent to sell in violation of Connecticut General Statute § 21a–277(a). An *Alford* plea results in a conviction that may be used as an ACCA predicate. *See Burrell v. United States,* 384 F.3d 22, 28 (2d Cir.2004) (noting that under Connecticut law the only distinction between an *Alford* plea and a standard guilty plea is in the evidentiary use that can be made of these pleas as factual admissions, and not of the fact of conviction); *Abimbola v. Ashcroft,* 378 F.3d 173, 181 (2d Cir.2004). However, as with any other conviction, the Government is re-quired to submit materials consistent with *Shepard* to establish that the conviction 'necessarily' involved facts equating to an ACCA predicate offense.

The Court has been provided with a copy of the certified information and a transcript of the plea colloquy for this conviction. The information does not identify the narcotic Madera was convicted of possessing. The transcript of the plea colloquy reveals that the prosecutor stated that the substance tested positive for heroin. However, after *Shepard,* the Court may rely on the transcript only to the extent it contains "explicit factual finding by the trial judge to which the defendant assented" or other statements "confirmed by the defendant." *Shepard,* 544 U.S. at 16, 26, 125 S.Ct. 1254 (rejecting use of police reports to determine whether offense of conviction was generic burglary). Connecticut generally rejects the view that nolo contendere or *Alford* pleas " 'indubitably . . . admit the [charged] facts and [are] intended to do so.' " *Burrell v. United States,* 384 F.3d 22, 29 –30 (2d Cir.2004) (quoting *Pfotzer v. Aqua Systems,* 162 F.2d 779, 785 (2d Cir.1947)). "Connecticut considers any 'tacit admission' implicit in nolo contendere and *Alford* pleas as too 'inconclusive and ambiguous' to be given 'currency beyond the particular case' in which the plea was entered." *Id.* (quoting *Lawrence v. Kozlowski,* 171 Conn. 705, 372 A.2d 110, 115 n. 4 (1976)).[2]

---

**1.** The government argues that the substance was cocaine. This theory is apparently based on a note in the arrest report that the substance was a white powder in a ziplock bag.

**2.** In *United States v. Palmer* the Second Circuit held that a prosecutor's statements during a Connecticut state court plea proceeding sufficed to establish that Palmer was convicted of a crime of violence. *United States v. Palmer,* 68 F.3d 52 (2d Cir.1995). During the prior plea hearing, the prosecutor read a de-scription of Palmer's conduct. *Id.* at 54. "The court then inquired whether Palmer had 'heard the [foregoing] facts that were read by the prosecutor' and agreed that he was entering his plea of nolo contendere thereto, and Palmer answered affirmatively." *Id.* It does not appear that the defendant in *Palmer* argued before the Second Circuit that, in entering a nolo contendere plea, he refused to confirm the facts as related by the state prosecutor. Indeed, it is unclear from the opinion's description whether Palmer confirmed

In the January 1997 plea proceeding, before accepting his plea, the state court informed Madera "[w]hen you plead under the *Alford* doctrine, that means that you don't agree with the facts as stated by the prosecutor." While the state court found that there was a factual basis for the plea and accepted it, the transcript of the plea colloquy does not contain any explicit factual findings by the court, and certainly none to which the defendant assented. Instead, Madera's plea reveals that he did not confirm that the substance was heroin. In the face of an explicit statement by the state court that Madera was disputing the prosecutor's facts and under Connecticut's law governing *Alford* pleas, Madera's entering an *Alford* plea to the crime of possession of unspecified narcotics with the intent to distribute does not amount to an admission that the prosecutor correctly identified the substance. Accordingly, based on this transcript the Court cannot determine the substance involved in Madera's 1997 conviction.

Next, on September 18, 2000, Madera was convicted of possession of narcotics with intent to sell, also in violation of Connecticut General Statute § 21a–277(a). Madera again pled pursuant to the *Alford* doctrine, and did not admit the factual basis for his guilty plea. The charging document for this offense is not available. The transcript of the plea colloquy reveals that the state court asked Madera whether he understood that the state "would rely on the fact" that Madera was found near 125 bags of heroin and he answered affir-

matively. However, the transcript also reveals that the state court advised Madera that in entering an *Alford* plea he was "saying, Judge, I do not admit those drugs were mine ... [and was] not admitting the factual basis for the plea." As with the 1997 conviction, the transcript of the plea colloquy does not contain any explicit factual findings by the court, and again Madera did not confirm that the substance was heroin. While Madera did confirm that he understood the nature of the evidence the state prosecutor would offer, he did so while continuing to dispute its accuracy. Again, based on the record before the Court, Madera's entering an *Alford* plea to the crime of possession of unspecified narcotics with the intent to distribute does not amount to an admission that the prosecutor correctly identified the substance. Accordingly, the prosecutor's statement cannot be used as evidence of the substance involved in Madera's 2000 conviction.

2. *Conn. Gen.Stat. § 21a–277(a) Proscribes Drugs which are not Federal Controlled Substances*

■ Connecticut General Statutes § 21a–277(a) prohibits, among other things, selling or possessing with the intent to sell "any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance." Connecticut General Statutes § 21a–243 authorizes the Commissioner of Consumer Protection to designate substances as controlled substances by regulation.[3] Benzyl-

that the facts related by the prosecutor were true, or merely that he agreed that the government would try to prove those facts if a trial were held. To the extent that *Palmer* does stand for the proposition that a sentencing court can consider statements made by a state prosecutor and not confirmed by the defendant, *Palmer* cannot survive *Shepard's* explicit holding that a sentencing court may

consider the transcript of a plea colloquy only "in which the factual basis for the plea *was confirmed by the defendant." Shepard*, 544 U.S. at 26, 125 S.Ct. 1254 (emphasis added).

3. Conn. Gen.Stat. § 21a–243(f) provides "In the event of any inconsistency between the contents of schedules I, II, III, IV and V of the controlled substance scheduling regulations and schedules I, II, III, IV and V of the

fentanyl and thenylfentanyl have been included in the Connecticut schedules of controlled substances as narcotics since 1987. Conn. Agencies Regs. § 21a–243–7(a)(10), (52).

On the other hand, as the government admits, benzylfentanyl and thenylfentanyl have not been listed on the federal controlled substance schedules since 1986.[4] The government contends that benzylfentanyl and thenylfentanyl are nonetheless proscribed by federal law as analogs of fentanyl, a schedule II controlled substance. 21 U.S.C. § 802(32)(A) provides that:

the term 'controlled substance analogue' means a substance—

(i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;

(ii) which has a stimulant, depressant, or hallucinogenic effect on the central

nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or

(iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

21 U.S.C. § 802(32)(A) is read conjunctively such that a controlled substance analog must have a chemical structure similar to that of a schedule I or II controlled substance and either have a similar effect or be represented or intended to have a similar effect to a schedule I or II controlled substance. *See United States v. Roberts,*

---

federal Controlled Substances Act, as amended, the provisions of the federal act shall prevail, except when the provisions of the Connecticut controlled substance scheduling regulations place a controlled substance in a schedule with a higher numerical designation, schedule I being the highest designation." This section cannot be interpreted to make the federal and state controlled substance schedules identical. Such a reading would render meaningless § 21a–243(c), which authorizes the commissioner of consumer protection to designate controlled substances and assign them to schedules, and § 21a–243(g) which provides for substances newly designated as federal controlled substances to be added to the Connecticut schedules on a temporary basis. Instead, § 21a–243(f) appears to operate as a floor ensuring that the Connecticut controlled substance schedule will be at least as strict as the federal schedule.

4. The controlled substance schedules were established by 21 U.S.C. § 812 and are known as schedules I, II, III, IV, and V. 21 U.S.C. § 812(a). Schedule I substances are the most dangerous, while Schedule V substances have

a relatively low potential for abuse. 21 U.S.C. § 812(b). The Attorney General is authorized to modify the controlled substance schedules after holding a hearing and making certain findings. 21 U.S.C. § 811.

Benzyl- and thenylfentanyl were added to the federal schedule of controlled substances on a temporary emergency basis in 1985. 50 Fed.Reg. 43698 (Oct. 29, 1985) ("The administrator of the Drug Enforcement Agency is issuing this notice to temporarily place ... benzylfentanyl ... [and] thenylfentanyl ... into Schedule I of the Controlled Substances Act (CSA) pursuant to the emergency scheduling provision of the CSA"). 21 U.S.C. § 811(h) authorizes the Attorney General to add substances on a temporary emergency basis to avoid imminent hazards to public safety. However, it also provides that "[t]he scheduling of a substance under this subsection shall expire at the end of one year from the date of the issuance of the order scheduling such substance." 21 U.S.C. § 811(h)(2). No action was taken to include benzylfentanyl or thenylfentanyl in the schedule of controlled substances, and accordingly, their listing expired in 1986.

363 F.3d 118, 121 (2d Cir.2004) (applying conjunctive reading).

Neither the government nor the defendant has presented evidence about the chemical structure of fentanyl or benzyl- or thenyl-fentanyl. However, the regulation which temporarily placed benzyl- and thenyl-fentanyl on the controlled substance schedules states that the three compounds have "close structural similarity." 50 FR 43698, at 43699 (Oct. 29, 1985). The government does not maintain that benzyl- or thenylfentanyl is pharmacologically active or that it has a "stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II." Thus, benzylfentanyl and thenylfentanyl are only proscribed by federal law if an individual represents or intends them "to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II." Intent to have an effect on the central nervous system is not an element of Madera's convictions, and as discussed above, the government has not presented evidence that Madera had any particular intent or made particular representations with regard to the drugs he was convicted of possessing.

The government also argues that Madera should be required to show that Connecticut has enforced its ban on benzylfentanyl or thenylfenantyl and cites *Gonzales v. Duenas–Alvarez*, — U.S. —, —, 127 S.Ct. 815, 822, 166 L.Ed.2d 683 (2007).

In *Duenas–Alvarez* the Supreme Court of the United States held

to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic possibility, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.

— U.S. —, 127 S.Ct. 815, 822, 166 L.Ed.2d 683 (2007). However, Duenas–Alvarez was arguing for a novel judicial interpretation of a state theft statute. Here the federal definition of "controlled substance" is not a generic definition, and Madera is not arguing for a novel judicial interpretation of a state statute. Instead both the federal and state definitions of "controlled substance" are established by reference to controlled substance schedules. Comparing the federal and state controlled substance schedules is a simple matter of comparing entries on two lists. When Connecticut added benzyl- and thenylfentanyl to its controlled substance schedules, it affirmatively chose to ban selling those substances or possessing them with intent to sell. It created a realistic probability that those selling benzyl- or thenylfentanyl would be prosecuted. While the Court is sympathetic to the government's argument that it is highly unlikely that any of Madera's subject convictions involved benzyl- or thenylfentanyl,[5]

5. While it does not effect this analysis, the Court notes that fenantyl is sometimes known as synthetic heroin.

Madera has established that § 21a–277(a) proscribes conduct that does not constitute a serious drug offense under 18 U.S.C. § 924(e).

Because Madera has established that Connecticut bans substances that are not federal controlled substances, and the government has not established the nature of the substances Madera was accused of selling or possessing with intent to sell, the Court cannot find that Madera's three unspecified narcotics convictions were serious drug offenses. Thus, these three convictions cannot be used as ACCA predicates.

### 3. *Conviction in Violation of Right to Counsel*

█ Finally, Madera's remaining relevant conviction does not qualify because it was obtained in violation of his right to counsel. On May 12, 1999, Madera was convicted of escape. However, the transcript of that change of plea proceeding reveals that the defendant was unrepresented and not advised that he had a right to counsel.[6] Defense counsel must be appointed in any criminal prosecution "that actually leads to imprisonment even for a brief period." *See Argersinger v. Hamlin,* 407 U.S. 25, 33, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). Furthermore, a defendant may collaterally attack a state court conviction for a violation of his right to counsel during a federal sentencing proceeding. *Custis v. United States,* 511 U.S. 485, 494–95, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994). Thus, as the government concedes, Mr. Madera's 1999 conviction cannot be used as an ACCA predicate.

### III. *Conclusion*

Accordingly, the Court finds that the government has only demonstrated that Mr. Madera has two ACCA predicate con-

victions and the Act cannot be applied to him.

---

6. The transcript also suggests that Madera did not understand the charges against him.