# Matter of Gustavo Ribeiro FERREIRA, Respondent

*Decided  September 22, 2014*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Where a State statute on its face covers a controlled substance not included in the Federal controlled substances schedules, there must be a realistic probability that the State would prosecute conduct under the statute that falls outside the generic definition of the removable offense to defeat a charge of removability under the categorical approach.

FOR RESPONDENT:  Mary Foden, Esquire, Hartford, Connecticut

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Amit Patel, Assistant Chief Counsel

BEFORE:  Board Panel:  PAULEY, MALPHRUS, and MULLANE, Board Members.

PAULEY, Board Member:

In a decision dated August 21, 2013, an Immigration Judge found the respondent removable under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (2012), as an alien convicted of an aggravated felony involving illicit trafficking in a controlled substance any time after admission under section 101(a)(43)(B) of the Act, 8 U.S.C. § 1101(a)(43)(B) (2012).  The Immigration Judge also found the respondent removable pursuant to section 237(a)(2)(B)(i) of the Act, as an alien convicted of a controlled substance violation any time after admission.  The respondent has appealed from that decision.  The record will be remanded to the Immigration Judge for further proceedings.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Brazil who was admitted to the United States as a lawful permanent resident on October 20, 2004.  On March 11, 2010, he pled guilty to the "sale of certain illegal drugs" in violation of section 21a-277(a) of the Connecticut General Statutes Annotated.  The criminal court sentenced the respondent to 5 years of confinement, suspended the execution of the sentence, and granted him 5 years of probation.  The respondent also received a fine of $7,500. Based on this conviction, the Department of Homeland Security ("DHS") charged

the respondent with removability under sections 237(a)(2)(A)(iii) and (B)(i) of the Act.

Both of these removability provisions incorporate the definition of a "controlled substance" in section 102 of the Controlled Substances Act ("CSA"), which is codified as 21 U.S.C. § 802 (2012). Under the CSA, a controlled substance is defined as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter." 21 U.S.C. § 802(6).

With regard to section 237(a)(2)(A)(iii) of the Act, the term "aggravated felony" in section 101(a)(43)(B) encompasses "illicit trafficking in a controlled substance (*as defined in section 102 of the Controlled Substances Act*), including a drug trafficking crime (as defined in section 924(c) of title 18, United States Code)." (Emphasis added.) An offense is a "drug trafficking crime" under 18 U.S.C. § 924(c)(2) (2012) if it is punishable as a "felony under the Controlled Substances Act, (21 U.S.C. 801 et seq.)." *See Lopez v. Gonzales*, 549 U.S. 47, 56 n.7, 60 (2006) (holding that a State drug offense "constitutes a 'felony punishable under the Controlled Substances Act,'" and by extension an aggravated felony, "only if it proscribes conduct punishable as a felony under that federal law," that is as an offense that carries a term of imprisonment exceeding 1 year).

Section 237(a)(2)(B)(i) of the Act similarly provides that

> [a]ny alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (*as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)*), other than a single offense involving possession for one's own use of thirty grams or less of marijuana, is deportable.

(Emphasis added.)

In support of the charges of removability, the DHS presented a copy of the respondent's criminal judgment, which states that he pled guilty to "sale of certain illegal drugs." The DHS also submitted a plea colloquy providing that the respondent was pleading guilty to the "sale of narcotics." Neither document identifies the specific narcotics by name.

The respondent filed a motion to terminate, arguing that the DHS had not established removability pursuant to the categorical approach. In this regard, the respondent observed that when he pled guilty in 2010, Connecticut's drug schedules regulated two obscure opiate derivatives (benzylfentanyl and thenylfentanyl) that have not been included in the Federal controlled substance schedules since 1986. He cited three cases that compared the Federal and Connecticut controlled substances schedules

and concluded that the State schedules were broader than the Federal schedules insofar as the State schedules listed these two opiate derivatives and the CSA did not. *United States v. Lopez*, 536 F. Supp. 2d 218, 221−22 (D. Conn. 2008); *United States v. Madera*, 521 F. Supp. 2d 149, 154−55 (D. Conn. 2007); *United States v. Cohens*, No. 3:07-cr-195 (EBB), 2008 WL 3824758 at *4–5 (D. Conn. Aug. 13, 2008); *see also McCoy v. United States*, 707 F.3d 184, 187−88 (2d Cir. 2013) (acknowledging the holdings in these three district court cases as well as the "obscure" nature of benzylfentanyl and thenylfentanyl).[1]

Since the Connecticut schedules were broader than the Federal schedules at the time of his conviction, the respondent contended that section 21a-277(a) did not "necessarily" proscribe conduct that was an offense under the CSA, as required by *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684–85 (2013). Moreover, he asserted that the record of conviction presented by the DHS did not provide a factual basis regarding the substance involved. Therefore, the respondent argued that the DHS did not satisfy its burden of proving removability by clear and convincing evidence pursuant to section 240(c)(3)(A) of the Act, 8 U.S.C. § 1229a(c)(3)(A) (2012), and 8 C.F.R. §1240.8(a) (2013).

In his decision, the Immigration Judge did not apply the categorical approach, instead proceeding directly to the modified categorical approach. Relying on *Gousse v. Ashcroft*, 339 F.3d 91 (2d Cir. 2003), he concluded that the DHS met its burden of proof through submission of the plea colloquy, which establishes that the respondent's offense involved a narcotic substance. On appeal, the respondent argues that reversal and termination are required under *Moncrieffe*.[2] The DHS has filed a motion for summary affirmance.

## II. ANALYSIS

This case presents an issue that often confronts Immigration Judges and the Board in determining whether an alien is removable based on

---

[1] Benzylfentanyl and thenylfentanyl were listed in Schedule I of the Controlled Substances Act on a temporary basis and their status expired on November 29, 1986, by operation of law. Schedules of Controlled Substances, 50 Fed. Reg. 43,698, 43,701 (Oct. 29, 1985); *see also* Dangerous Drug Diversion Control Act of 1984, Pub. L. No. 98-473, § 508, 98 Stat. 2068, 2072 (codified at 21 U.S.C. § 811(h)(2) (Supp. II 1984)).

[2] The respondent has not disputed the Immigration Judge's additional holding that even if his conviction involved delivery of a controlled substance by gift or offer, this would still constitute distribution and be punishable as a Federal felony. *See Pascual v. Holder*, 723 F.3d 156, 158−59 (2d Cir. 2013).

a conviction under State law for possessing or trafficking in a controlled substance.  Since the enactment of the CSA in 1970, approximately 160 substances have been added, removed, or transferred from one schedule to another.  *See* Office of Diversion Control, Drug Enforcement Admin., U.S. Dep't of Justice, Controlled Substance Schedules, http://www.dea diversion.usdoj.gov/schedules/ (last visited Sept. 19, 2014) ("Controlled Substance Schedules").  An updated and complete list of the five schedules is published annually.    *See* 21 C.F.R. §§ 1308.11−1308.15 (2014). Substances are placed in their respective schedules based on their currently accepted medical use in treatment in the United States, their relative abuse potential, and the likelihood that they will cause dependence when being abused.  *See* Controlled Substance Schedules, *supra*.

Since the schedules of the CSA change frequently, they often do not match State lists of controlled substances, which are found in statutes and regulations that are amended with varying frequency.  That was the case here, because Connecticut listed benzylfentanyl and thenylfentanyl as controlled substances in its regulations at the time of the respondent's 2010 conviction in violation of section 21a-277(a) of the Connecticut General Statutes Annotated, long after the 1985 removal of these two obscure substances from the Federal schedules.  *See also* Sarah French Russell, *Rethinking Recidivist Enhancements:  The Role of Prior Drug Convictions in Federal Sentencing*, 43 U.C. Davis L. Rev. 1135, 1205 n. 344 (2010) (enumerating other States in which benzylfentanyl and thenylfentanyl remain listed).

Connecticut amended its schedules to exclude benzylfentanyl and thenylfentanyl shortly after the publication of *United States v. Madera*, *United States v. Lopez*, and *United States v. Cohens*.  In any event, the presence of these two substances in the Connecticut schedules at the time of the respondent's conviction meant that the definition of a controlled substance incorporated by section 21a-277(a) was broader than the definition of a controlled substance in 21 U.S.C. § 802(6), which is incorporated by reference into sections 101(a)(43)(B) and 237(a)(2)(B)(i) of the Act.

In *Moncrieffe*, the Court considered whether an alien's conviction for possession of marijuana with intent to distribute under Georgia law qualified as an aggravated felony conviction under section 101(a)(43)(B) of the Act, making him removable under section 237(a)(2)(A)(iii).  The Court explained that the categorical approach requires looking not to the facts of a prior criminal case, but to "whether 'the state statute defining the crime of conviction' categorically fits within the 'generic' federal definition of a corresponding" removal ground.  *Moncrieffe v. Holder*, 133 S. Ct. at 1684 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 186 (2007)).

"Generic" means that "offenses must be viewed in the abstract, to see whether the state statute shares the nature of the Federal offense that serves as a point of comparison." *Id.* Therefore, a State offense categorically matches a generic Federal offense only if a conviction for the State offense "'necessarily' involved . . . facts equating" to the generic Federal offense. *Id.* (quoting *Shepard v. United States*, 544 U.S. 13, 24 (2005) (plurality opinion)). Since the categorical approach requires examining what the State conviction necessarily involved, and not the facts underlying the case, "we must presume that the conviction 'rested upon [nothing] more than the least of th[e] acts' criminalized, and then determine whether even those acts are encompassed by the generic federal offense." *Id.* (alterations in original) (quoting *Johnson v. United States*, 559 U.S. 133, 137 (2010)). The Court further stated that the categorical approach's "focus on the minimum conduct criminalized by the state statute is not an invitation to apply 'legal imagination' to the state offense." *Id.* at 1684−85 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. at 193). Rather, the respondent must show "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Id.* at 1685 (quoting same) (internal quotation marks omitted). As the Court previously explained:

> [T]o find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility that the State would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.

*Gonzales v. Duenas-Alvarez*, 549 U.S. at 193. Although sometimes overlooked when determining removability,[3] this "realistic probability test" is part of the initial inquiry that an Immigration Judge must undertake when applying the categorical approach.

Importantly for this case, the Court in *Moncrieffe* addressed the Government's concern that its holding would necessarily tend to preclude aliens from being removable based on an aggravated felony conviction for

---

[3]   In *Ragasa v. Holder*, 752 F.3d 1173, 1175−76 (9th Cir. 2014), the United States Court of Appeals for the Ninth Circuit terminated proceedings because the modified categorical approach did not show that benzylfentanyl and thenylfentanyl did not form the basis of the alien's conviction. However, the court did not apply the "realistic probability" analysis under *Moncrieffe* and *Duenas-Alvarez*.

illicit trafficking in firearms pursuant to section 101(a)(43)(C) of the Act, which defines an aggravated felony with reference to a Federal firearms statute containing an exception for "antique firearm[s]," 18 U.S.C. § 921(a)(3) (2012). *Moncrieffe v. Holder*, 133 S. Ct. at 1693. The Government asserted in *Moncrieffe* that, under the Court's reasoning, a conviction under any State firearms law lacking such an "antique firearms" exception would be found to fail the categorical inquiry. *Id.* The Court rejected this concern, however, noting that

> *Duenas-Alvarez* requires that there be "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." To defeat the categorical comparison in this manner, *a noncitizen would have to demonstrate* that the State actually prosecutes the relevant offense in cases involving antique firearms.

*Id.* (emphasis added) (citation omitted).

We applied this Supreme Court rule in *Matter of Chairez*, 26 I&N Dec. 349, 355−58 (BIA 2014). The respondent in *Chairez* asserted that the DHS had not established removability under section 237(a)(2)(C) of the Act because the Federal definition of the term "firearm" excludes "antique firearm[s]," as defined by 18 U.S.C. § 921(a)(16), whereas the statute of conviction, section 76-10-508.1 of the Utah Code, contains no such exclusion. *Id.* In light of *Moncrieffe* and *Duenas-Alvarez*, we rejected the respondent's argument and clarified "that a State firearms statute that contains no exception for 'antique firearms' is categorically overbroad relative to section 237(a)(2)(C) of the Act only if the alien demonstrates that the State statute has, in fact, been successfully applied to prosecute offenses involving antique firearms." *Id.* at 356. As the respondent offered no support for his contention that section 76-10-508.1 of the Utah Code is actually used to successfully prosecute individuals who unlawfully discharge "antique firearms," we discerned no "realistic probability" that the statute would be applied in that manner. *Id.* at 357. We therefore held that the Immigration Judge properly sustained the firearms offense charge against the respondent. *Id.* at 358; *see also United States v. Carrasco-Tercero*, 745 F.3d 192, 197−98 (5th Cir. 2014) (applying *Moncrieffe* in holding that a defendant was required to demonstrate a realistic probability that New Mexico would charge an individual with aggravated assault on the basis of using insulting language while handling a deadly weapon).

Therefore, the import of *Moncrieffe* and *Duenas-Alvarez* is that even where a State statute on its face covers a type of object or substance not included in a Federal statute's generic definition, there must be a realistic probability that the State would prosecute conduct falling outside the

generic crime in order to defeat a charge of removability.  Given the requirement in *Moncrieffe* to focus on the least culpable conduct under the categorical approach, rather than the alien's actual conduct, the application of the realistic probability test is necessary to prevent the categorical approach from eliminating the immigration consequences for many State drug offenses, including trafficking crimes.

With that background, we now address the respondent's removability under sections 237(a)(2)(A)(iii) and (B)(i) of the Act.  The Act and the regulations provide that the DHS bears the burden of proving removability by clear and convincing evidence.  Section 240(c)(3)(A) of the Act; 8 C.F.R. § 1240.8(a) (2014).  In accordance with this burden, the DHS initiated removal proceedings and presented a copy of the respondent's 2010 criminal judgment.  The judgment states that he pled guilty to "sale of certain illegal drugs" in violation of section 21a-277(a) of the Connecticut General Statutes Annotated, which provides in pertinent part:

> Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned . . . .

The evidence submitted by the DHS establishes that the respondent was convicted under a State statute proscribing conduct that is an offense under the CSA: possession of a controlled substance with intent to distribute. *See* 21 U.S.C. § 841(a)(1).  Assuming that the substance was one included in 21 U.S.C. § 802, the statute further corresponds to a felony punishable under the CSA since the maximum term of imprisonment exceeds 1 year. *See Lopez v. Gonzales*, 549 U.S. at 56 n.7, 60.

Invoking the categorical approach, the respondent argues that section 21a-277(a) did not "necessarily" proscribe conduct that was an offense under the CSA when he pled guilty in 2010 because Connecticut's drug schedules regulated two obscure opiate derivatives (benzylfentanyl and thenylfentanyl) that have not been included in the Federal schedules since 1986.  However, the categorical approach requires us to first apply the realistic probability test.

Under that test, for the proceedings to be terminated based on this discrepancy between the Connecticut and Federal schedules, Connecticut must actually prosecute violations of section 21a-277(a) in cases involving benzylfentanyl and thenylfentanyl. *See Moncrieffe v. Holder*, 133 S. Ct. at 1693; *Gonzales v. Duenas-Alvarez*, 549 U.S. at 193; *see also United States*

*v. Carrasco-Tercero*, 745 F.3d at 197−98. Thus, a motion to terminate should be granted if the respondent can, as stated in *Duenas-Alvarez*, 549 U.S. at 193, "at least point to his own case or other cases in which the [Connecticut] state courts in fact did apply the statute in the special (nongeneric) manner for which he argues."

The Immigration Judge did not apply the realistic probability test but instead sustained the charges under the modified categorical approach because the plea colloquy states that the respondent pled guilty to the "sale of narcotics." In this regard, the Immigration Judge erred because even assuming that section 21a-277(a) of the Connecticut General Statutes Annotated is divisible, both pertinent substances not listed in the Federal schedules *are narcotics*. *See* 50 Fed. Reg. 43,698, 43,698−99 (Oct. 29, 1985); *McCoy v. United States*, 707 F.3d at 187–88. Therefore, the modified categorical approach is unavailing in this case.

However, as explained above, the "realistic probability" test must be applied as part of the categorical approach, but it was not applied by the Immigration Judge. Since such application requires fact-finding, we will remand the record to the Immigration Judge for application of the realistic probability test, as described in *Moncrieffe* and *Duenas-Alvarez*. On remand, the parties may submit additional evidence and argument, which may include evidence of Connecticut prosecutions (or the lack thereof) for possession or sale of benzylfentanyl and thenylfentanyl, or evidence that the respondent's conviction involved these obscure substances, rather than those included on the Federal schedules.

**ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.