**UNITED STATES of America,**
**Appellee,**

v.

**Patrick JACKSON, Defendant–**
**Appellant.**

**Docket No. 01–1049.**

United States Court of Appeals,
Second Circuit.

Argued: June 27, 2002.

Decided: Aug. 22, 2002.

Miriam H. Baer, Assistant United States Attorney for the Southern District of New York, New York, N.Y. (James B. Comey, United States Attorney, and Celeste L. Koeleveld, Assistant United States Attorney, on the brief), for Appellant.

Jonathan Svetkey, Watters & Svetkey, LLP, New York, NY, for Appellee.

Before JACOBS, LEVAL, KATZMANN, Circuit Judges.

JACOBS, Circuit Judge.

Patrick Jackson appeals from a judgment entered in the United States District Court for the Southern District of New York (Kaplan, *J.*) convicting him following a jury trial on two counts of being a felon in possession of a firearm or ammunition, in violation of 18 U.S.C. § 922(g). Count One charged Jackson with possessing ammunition found on his person; Count Two charged Jackson with constructively possessing a firearm recovered from under the driver's seat of a car he owned and was driving. Jackson was sentenced as an

armed career criminal pursuant to 18 U.S.C. § 924(e) and United States Sentencing Guidelines ("U.S.S.G.") § 4B1.4. One of the three predicate "violent felony" convictions is a conviction for escape.

On appeal, Jackson challenges (1) the sufficiency of the evidence on each count and certain evidentiary rulings; and (2) the district court's ruling that escape constitutes a "violent felony" under the armed career criminal statute. We consider Jackson's arguments in reverse order.

# I

The district court sentenced Jackson as an armed career criminal pursuant to 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4. Section 924(e) calls for a minimum sentence of fifteen years for any defendant who violates § 922(g) (i.e., a felon in possession) and who has three previous violent felony convictions.[1]

A "violent felony" is defined in § 924(e)(2)(B):

[A]ny crime punishable by imprisonment for a term exceeding one year ... that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another* ....

§ 924(e)(2)(B) (emphasis added). As an armed career criminal, Jackson's sentencing range was increased from 100–125 months to 235–293 months; he was sentenced to the minimum 235 months' imprisonment on each count, to run concurrently.

■ It is uncontested that two of Jackson's prior felony convictions are violent felonies. It is also uncontested that the escape conviction was "punishable by imprisonment for a term exceeding one year." Jackson's escape therefore can be classified as a "violent felony" only if it "involves conduct that presents a serious potential risk of physical injury to another."

■ In determining whether Jackson's prior conviction for escape constitutes a violent felony under § 924(e), we take a "categorical approach," generally looking only to the fact of conviction and the statutory definition of the prior offense rather than to the underlying facts of a particular offense. *Taylor v. United States*, 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990).

Jackson argues that an escape is not categorically "conduct that presents a serious potential risk of physical injury to another" because the Florida escape statute (under which he was convicted) punishes the escapee who peaceably walks away from a work site as well as the inmate who violently busts out of confinement. Jackson's reading of the statute is sound:

Any prisoner confined in any prison, jail, private correctional facility, road camp, or other penal institution, ... working upon the public roads, or being transported to or from a place of confinement who escapes or attempts to escape from such confinement commits a felony of the second degree ....

Fla. Stat. § 944.40. The question presented is therefore whether escape, regardless of the particular circumstances, amounts to a

---

1. Section 4B1.4 provides that any "defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) is an armed career criminal" and further provides for what is often a substantial increase in the defendant's offense level.

violent felony under § 924(e); that is, whether every escape constitutes "conduct that presents a serious potential risk of physical injury to another."

Every circuit court that has considered the issue has held that an escape, from whatever location by whatever means, constitutes "conduct that presents a serious potential risk of physical injury to another." *See, e.g., United States v. Hairston,* 71 F.3d 115, 117–18 (4th Cir.1995); *United States v. Houston,* 187 F.3d 593, 594–95 (6th Cir.1999); *United States v. Moudy,* 132 F.3d 618, 620 (10th Cir.1998). We also look to cases construing U.S.S.G. § 4B1.2 (career offender), which defines a "crime of violence" in wording substantially identical to the definition of "violent felony" under § 924(e).[2] Several courts have considered whether escape constitutes a "crime of violence" under that provision, and they agree that any escape, however effected, constitutes "conduct that presents a serious potential risk of physical injury to another." *See, e.g., United States v. Dickerson,* 77 F.3d 774, 777 (4th Cir.1996); *United States v. Ruiz,* 180 F.3d 675, 676–77 (5th Cir.1999) (rejecting walkaway escape argument); *United States v. Harris,* 165 F.3d 1062, 1068 (6th Cir.1999); *United States v. Nation,* 243 F.3d 467, 472 (8th Cir.2001) ("We believe that every escape, even a so-called 'walkaway' escape, involves a potential risk of injury to others.... Even the most peaceful escape cannot eliminate the potential for violent conflict when the authorities attempt to recapture the escapee."); *United States v. Mitchell,* 113 F.3d 1528, 1532–33 & n. 2

(10th Cir.1997) (rejecting walkaway escape argument); *United States v. Gay,* 251 F.3d 950, 954–55 (11th Cir.2001) (same).

The reasoning of the Tenth Circuit is highly persuasive:

> [E]very escape scenario is a powder keg, which may or may not explode into violence and result in physical injury to someone at any given time, but which always has the serious *potential* to do so. A defendant who escapes from a jail is likely to possess a variety of supercharged emotions, and in evading those trying to recapture him, may feel threatened by police officers, ordinary citizens, or even fellow escapees. Consequently, violence could erupt at any time. Indeed, even in a case where a defendant escapes from a jail by stealth and injures no one in the process, there is still a serious potential risk that injury will result when officers find the defendant and attempt to place him in custody.

*United States v. Gosling,* 39 F.3d 1140, 1142 (10th Cir.1994) (emphasis in original) (internal citation omitted). The Fourth Circuit employed similar reasoning:

> Critical to our conclusion is the chance that in the case of an escape by stealth, the escapee will be intentionally or unintentionally interrupted by another, for example a prison guard, police officer or ordinary citizen. This encounter inherently presents the serious potential risk of physical injury to another, because the escapee, intent on his goal of escaping, faces the decision of whether to dispel the interference or yield to it. To

---

**2.** Section 4B1.2 defines "crime of violence" as

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another.*

U.S.S.G. § 4B1.2 (emphasis added).

avoid jeopardizing the success of the escape and further punishment upon capture, the escapee may choose to dispel the interference by means of physical force.

*Hairston*, 71 F.3d at 118.

We adopt the reasoning and holding of these cases. An inmate who escapes by peacefully walking away from a work site will (if he can) be inconspicuous and discreet, and will (if he can) avoid confrontation and force. But escape invites pursuit; and the pursuit, confrontation, and recapture of the escapee entail serious risks of physical injury to law enforcement officers and the public. This makes escape a violent felony under § 924(e). *Cf. United States v. Dillard*, 214 F.3d 88 (2d Cir.2000) (holding that, though a convicted felon's illegal possession of a firearm under 18 U.S.C. § 922(g)(1) may be done in peaceable fashion, that crime is nonetheless properly construed as a "crime of violence" under the Bail Reform Act of 1984, 18 U.S.C. § 3156(a)(4), exposing the defendant to the possibility of detention, because that offense, "by its nature, involves a substantial risk that physical force ... may be used"). The district court therefore properly sentenced Jackson as an armed career criminal.

## II

Jackson also contends that (1) the evidence at trial was insufficient to support conviction on either count and (2) the district court erred in admitting certain evidence. However, the evidence unchallenged on appeal (as reviewed below) is so compelling that we conclude as to each count that any evidentiary errors were harmless.

### A.

On the evening of January 19, 2000, Police Officer Fong and his partner, Sergeant Planeta, were on patrol in the Bronx looking for a car reportedly involved in a recent robbery. Fong and Planeta located a parked car fitting the description, ran a computer check of the license-plate number, and learned that the car was registered to a man whose driver's license was suspended: Patrick Jackson.

Fong and Planeta followed the car as it left, noticed that the driver was not wearing a seat belt, and pulled the car over. When Fong and Planeta approached the car, Jackson was in the driver's seat, and a man was in the front passenger seat with a woman seated directly behind him. After the officers requested and examined Jackson's driver's license and registration, Planeta asked Jackson to get out, and frisked him. Fong, keeping an eye on the passengers as he stood at the rear passenger door, watched the frisk in his peripheral vision. As Fong testified:

> The next thing I realized was a tap on the roof, and I glanced over and I observed my partner waving an object in his hand, tapping on the roof like this, and it was like ["]see what I got,["] and at first glance I thought it was a pocket knife.... A second later I actually focused in on it, and I realized it was a magazine clip to a firearm.

Fong asked the two passengers to get out, and finding no weapons on either passenger, he searched the car and found a black .380 caliber Jennings Bryco semiautomatic pistol under the driver's seat, lying "right there." Fong observed that the clip in the gun was practically identical to the clip recovered from Jackson. There were seven bullets in the gun—six in the clip and one in the chamber—and seven bullets in the clip recovered from Jackson. At trial, an ATF special agent testified that the two clips were essentially the same, and that the clip recovered from

Jackson was compatible with the firearm found under the driver's seat.

After his arrest, Jackson spoke to a detective at the precinct, admitted that he "had the gun in the car," and said where he had gotten it. However, Jackson refused to sign the statement, and later that night told another detective that the gun was not his. Jackson said that he was in the music business and drove around a lot, and suggested that the gun was put there by some person unknown when, as is his habit, he left his car unlocked. He also speculated that the gun could have belonged to the woman passenger. When the detective asked about the magazine clip found by Planeta, Jackson responded: "Clip, what clip? ... I must be getting set up."

### B.

Jackson contends that the evidence was insufficient to support the ammunition charge because Planeta did not testify and because Fong did not see Planeta remove the clip from Jackson's person. (The Government expressly charged Jackson with actual possession in part to avoid a multiplicity problem, and therefore could not rely on constructive possession.) Jackson contends that the evidence was insufficient to support the gun charge because the gun could have been put where it was found by one of the passengers or by anyone else who happened to open the usually unlocked door.

■ We review a claim of insufficient evidence *de novo*. *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir.2000). "A defendant challenging his verdict on sufficiency grounds bears a 'heavy burden.'" *United States v. McCarthy*, 271 F.3d 387, 394 (2d Cir.2001) (quoting *United States v. Bala*, 236 F.3d 87, 93 (2d Cir.2000)).

Jackson does not challenge the admissibility of evidence supporting the narrative set forth above (*supra* II.A.), which we conclude was more than sufficient to support the jury's verdict on both counts.

■ As to the ammunition count: Fong testified that Planeta displayed the clip to show Fong what had been found during the frisk; a reasonable juror could find on that basis that the clip was taken from Jackson's person. Moreover, the clip in dispute fit the gun later found under the driver's seat of the car that Jackson owned and was driving. Jackson has not argued that the gun was planted by the police; and, regardless, no reasonable juror could find that Planeta luckily planted an ammunition clip that just happened to match the gun later found under the seat (as well as the other ammunition clip in the gun).

As to the gun count: Jackson was the registered owner of the car in which the gun was found; the gun was found under the driver's seat of the car he was driving; and neither passenger had ready access to the gun (the rear-seat passenger was behind the other passenger) or an ammunition clip. In addition, according to the testimony of the detective who conducted the first precinct interview, Jackson admitted that the gun was his. Jackson's recantation was evidently disregarded by the jury, perhaps because the ammunition found on Jackson's person fit the gun.

### C.

■ Finally, Jackson argues that the district court erroneously admitted certain evidence. Given the weight of evidence that is not challenged on appeal, any error was harmless: "[E]ven if there was an abuse of discretion [in admitting evidence], we will not order a new trial if the error was harmless—i.e., the evidence was 'unimportant in relation to everything else the jury considered on the issue in question.'"

*United States v. Germosen,* 139 F.3d 120, 127 (2d Cir.1998) (quoting *United States v. Rea,* 958 F.2d 1206, 1220 (2d Cir.1992) (quoting *Yates v. Evatt,* 500 U.S. 391, 403, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991))). "An erroneous ruling on the admissibility of evidence is harmless if the appellate court can conclude with fair assurance that the evidence did not substantially influence the jury." *Rea,* 958 F.2d at 1220.

We have reviewed the other arguments made by Jackson in his *Pro Se* Supplemental Brief and find them to be without merit.

\* \* \*

For the foregoing reasons, we affirm.