**UNITED STATES of America**

v.

**Tyrone HENRY.**

**No.  3:06CR00135 (AWT).**

United States District Court,
D. Connecticut.

June 4, 2008.

John H. Durham, Kevin J. O'Connor, U.S. Attorney's Office, New Haven, CT, for United States of America.

Richard S. Cramer, Wethersfield, CT, for Tyrone Henry.

### RULING ON DEFENDANT'S STATUS AS A CAREER OFFENDER UNDER U.S.S.G. § 4B1.1

ALVIN W. THOMPSON, District Judge.

On March 7, 2007, the defendant, Tyrone Henry, pled guilty to Count Six of an Indictment charging him with Possession of Cocaine Base With Intent to Distribute and Distribution in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). After entering his guilty plea, the defendant affirmed that he had previously been convicted as alleged in a Second Offender Information filed by the government pursuant to 21 U.S.C. §§ 851 and 962. The Second Offender Information alleges that the defendant had previously been convicted in Connecticut Superior Court on April 8, 1997 for Sale of Narcotics and on April 30, 2003 for Criminal Violation of a Protective Order. Based on these prior convictions, the government argues that the defendant is a career offender pursuant to U.S.S.G § 4B1.1. The defendant objects to the career offender designation, arguing that his conviction under Conn. Gen.Stat. § 53a–223(a) for Criminal Violation of a Protective Order does not qualify as a "crime of violence" as defined in U.S.S.G § 4B1.2(a). For the reasons set forth below, the court concludes that the requirements for the career offender enhancement under U.S.S.G. § 4B1.1 are not satisfied in this case.

### I. LEGAL STANDARD

Section 4B1.1 provides that a defendant is a career offender if:

(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction;

(2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and

(3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a) (2007). A "crime of violence" is defined as any offense punishable by imprisonment for more than one year that:

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G § 4B1.2 (2007).

At issue in *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), was 18 U.S.C. 924(e), a statute

providing for a sentence enhancement for a person convicted under 18 U.S.C. § 922(g) who has three prior convictions for a "violent felony." The Supreme Court adopted a "categorical approach" to determining whether an offense constitutes a "violent felony" that "requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense." *Id.* at 602, 110 S.Ct. 2143. The Second Circuit followed this categorical approach in a case analogous to the instant case, *United States v. Palmer,* 68 F.3d 52 (2d Cir.1995), in interpreting the term "crime of violence" in what is now U.S.S.G. § 4B1.2(a). *See also United States v. Brown,* 514 F.3d 256, 268 (2d Cir.2008) ("[I]n determining whether a defendant's prior [offenses] were crimes of violence within the meaning of Guidelines § 4B1.2(a), we have been guided by cases interpreting § 924(e)."). In *Palmer,* the court held that, "if any conviction under a statute must necessarily be imposed for conduct that constitutes . . . a 'crime of violence' . . . because of the terms of the statute, then the fact of conviction, standing alone satisfies" § 4B1.2(a). *Palmer,* 68 F.3d at 55. "If, on the other hand, the statute reaches both conduct that satisfies [this definition] and conduct that does not, then the charging instrument and jury instructions may be consulted to determine whether the prior conviction was imposed for conduct that qualifies for enhancement purposes." *Id.* at 55–56. In *Palmer,* the court determined that the "sources mentioned in *Taylor,* the indictment or information and jury instructions," were not helpful in its inquiry. *Id.* at 56. The court determined, however, that "the plea proceeding include[d] a lucid description of the conduct for which Palmer was convict-

ed" and that Palmer had agreed on the record to the description of his conduct proffered by the prosecutor during that proceeding. *Id.* at 59. On that basis, the court concluded that the prior conviction had been imposed for conduct that qualified for enhancement purposes. The approach taken by the court in *Palmer* was proper because "[t]he Court [in *Taylor*] did not . . . purport to limit adequate judicial record evidence strictly to charges and instructions." *Shepard v. United States,* 544 U.S. 13, 20, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). Courts are "generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Id.* at 16, 125 S.Ct. 1254. However, courts may not consider the presentence investigation report. *See Palmer,* 68 F.3d at 55.[1] Nor can courts consider police reports or complaint applications. *See Shepard,* 544 U.S. at 19–24, 125 S.Ct. 1254.

In *James v. United States,* — U.S. ——, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007), the Supreme Court again employed the categorical approach. In *James,* the issue was whether the crime of attempted burglary, as defined by Florida law, is an offense that "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. 924(e)(2)(B)(ii). The court stated:

> In answering this question, we employ the " 'categorical approach' " that this Court has taken with respect to other offenses under ACCA. Under this approach, we " 'look only to the fact of conviction and the statutory definition of the prior offense,' " and do not generally

---

1. Thus, the fact that the PSR here indicates that the defendant's conduct in violating the protective order at issue involved the use of force is irrelevant to determining whether his conviction for Criminal Violation of a Protective Order is a conviction of a "crime of violence," as defined in U.S.S.G. § 4B1.2(a).

consider the "particular facts disclosed by the record of conviction." *Shepard v. United States,* 544 U.S. 13, 17, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005) (quoting *Taylor,* 495 U.S., at 602, 110 S.Ct. 2143). That is, we consider whether the elements of the offense are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender.

*James,* 127 S.Ct. at 1593–1594.

In *Begay v. United States,* the Court again employed the categorical approach, stating:

> In determining whether this crime is a violent felony, we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion. *See Taylor v. United States,* 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) (adopting this "categorical approach"); see also *James v. United States,* 550 U.S. ——, ——, 127 S.Ct. 1586, 1597, 167 L.Ed.2d 532 (2007) (attempted burglary is a violent felony even if, on *some* occasions, it can be committed in a way that poses no serious risk of physical harm).

—— U.S. ——, 128 S.Ct. 1581, 1584, 170 L.Ed.2d 490 (2008). However, in interpreting the phrase "or otherwise involves conduct that presents a serious potential risk of physical injury to another" in clause (ii) of 18 U.S.C. § 924(e)(2)(B), the Court also concluded that:

> " '[T]o give effect ... to every clause and word' " of this statute, we should read the examples as limiting the crimes that clause (ii) covers to crimes that are roughly similar, in kind as well as in

degree of risk posed, to the examples themselves.

*Id.* at 1585 (internal citation omitted).

## II. DISCUSSION

■ The defendant was convicted of Criminal Violation of a Protective Order under Conn. Gen.Stat. § 53a–223(a). To determine whether this offense constitutes a "crime of violence" that can serve as a basis for a career offender enhancement under U.S.S.G. § 4B1.1, the court must "consider whether the *elements of the offense* are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct for this particular offender." *James,* 127 S.Ct. at 1594 (emphasis in original). Thus, the court must first analyze the statutory definition of "criminal violation of a protective order" to determine whether the elements of the offense are such that any conviction under that statute must necessarily be imposed for "conduct that presents a serious potential risk of physical injury to another."

At the time the defendant committed the offense, the statute provided that "[a] person is guilty of criminal violation of a protective order when an order issued pursuant to subsection (e) of section 46b–38c, or section 54–1k or 54–82r has been issued against such person, and such person violates such order." Conn. Gen.Stat. § 53a–223(a) (2002). The defendant in this case violated a Family Violence Protective Order issued under § 46b–38c(e), which read:

> A protective order issued under this section *may include provisions necessary to protect the victim from threats, harassment, injury or intimidation by the defendant, including, but not limited to, an order enjoining the defendant from (1) imposing any restraint upon the person or liberty of the victim, (2) threatening, harassing, assaulting, mo-*

*lesting or sexually assaulting the victim, or (3) entering the family dwelling or the dwelling of the victim.* Such order shall be made a condition of the bail or release of the defendant and shall contain the following language: "In accordance with section 53a–223, any violation of this order constitutes criminal violation of a protective order. Additionally, in accordance with section 53a–107, entering or remaining in a building or any other premises in violation of this order constitutes criminal trespass in the first degree. These are criminal offenses each punishable by a term of imprisonment of not more than one year, a fine of not more than two thousand dollars, or both. Violation of this order also violates a condition of your bail or release, and may result in raising the amount of bail or revoking release." Every order of the court made in accordance with this section after notice and hearing shall also contain the following language: "This court had jurisdiction over the parties and the subject matter when it issued this protection order. Respondent was afforded both notice and opportunity to be heard in the hearing that gave rise to this order. Pursuant to the Violence Against Women Act of 1994, 18 USC 2265, this order is valid and enforceable in all fifty states, any territory or possession of the United States, the District of Columbia, the Commonwealth of Puerto Rico and tribal lands." The information contained in and concerning the issuance of any protective order issued under this section shall be entered in the registry of protective orders pursuant to section 51–5c. Conn. Gen.Stat. § 46b–38c(e) (2002) (emphasis added). The statute under which the defendant was convicted also covers protective orders issued under Conn. Gen. Stat. §§ 54–1k and 54–82r. At the time the defendant committed the offense, Section 54–1k, which covers the issuance of protective orders in stalking and harassment cases, read:

Upon the arrest of a person for a violation of section 53a–181c, 53a–181d or 53a–181e, the court may issue a protective order pursuant to this section. Such order shall be an order of the court, and the clerk of the court shall cause a certified copy of such order to be sent to the victim, and a copy of such order, or the information contained in such order, to be sent by facsimile or other means within forty-eight hours of its issuance to the appropriate law enforcement agency. *A protective order issued under this section may include provisions necessary to protect the victim from threats, harassment, injury or intimidation by the defendant, including but not limited to, an order enjoining the defendant from (1) imposing any restraint upon the person or liberty of the victim, (2) threatening, harassing, assaulting, molesting or sexually assaulting the victim, or (3) entering the dwelling of the victim.* Such order shall be made a condition of the bail or release of the defendant and shall contain the following language: "In accordance with section 53a–223, any violation of this order constitutes criminal violation of a protective order. Additionally, in accordance with section 53a–107, entering or remaining in a building or any other premises in violation of this order constitutes criminal trespass in the first degree. These are criminal offenses each punishable by a term of imprisonment of not more than one year, a fine of not more than two thousand dollars, or both. Violation of this order also violates a condition of your bail or release and may result in raising the amount of bail or revoking release." The information contained in and con-

cerning the issuance of any protective order issued under this section shall be entered in the registry of protective orders pursuant to section 51–5c.

Conn. Gen.Stat. § 54–1k (2002) (emphasis added). At the time the defendant committed the offense, Section 54–82r, which covers protective orders prohibiting harassment of witnesses, read:

(a) Upon application of a prosecutorial official, a court may issue a protective order prohibiting the harassment of a witness in a criminal case if the court, after a hearing at which hearsay evidence shall be admissible, finds by a preponderance of the evidence that harassment of an identified witness in a criminal case exists or that such order is necessary to prevent and restrain the commission of a violation of section 53a–151 or 53a–151a. Any adverse party named in the complaint has the right to present evidence and cross-examine witnesses at such hearing. Such order shall be an order of the court, and the clerk of the court shall cause a certified copy of such order to be sent to the witness, and a copy of such order, or the information contained in such order, to be sent by facsimile or other means within forty-eight hours of its issuance to the appropriate law enforcement agency.

(b) A protective order shall set forth the reasons for the issuance of such order, be specific in terms and describe in reasonable detail, and not by reference to the complaint or other document, the act or acts being restrained. *A protective order issued under this section may include provisions necessary to protect the witness from threats, harassment, injury or intimidation by the adverse party including, but not limited to, enjoining the adverse party from (1) imposing any restraint upon the person or liberty of the witness, (2) threatening, harassing, assaulting, molesting or sexually assaulting the witness, or (3) entering the dwelling of the witness.* Such order shall contain the following language: "In accordance with section 53a–223 of the general statutes, any violation of this order constitutes criminal violation of a protective order. Additionally, in accordance with section 53a–107 of the general statutes, entering or remaining in a building or any other premises in violation of this order constitutes criminal trespass in the first degree. These are criminal offenses each punishable by a term of imprisonment of not more than one year, a fine of not more than two thousand dollars, or both." If the adverse party is the defendant in the criminal case, such order shall be made a condition of the bail or release of the defendant and shall also contain the following language: "Violation of this order also violates a condition of your bail or release and may result in raising the amount of bail or revoking release."

(c) The protective order shall remain in effect for the duration of the criminal case except as otherwise ordered by the court.

Conn. Gen.Stat. § 54–82r (2002) (emphasis added).

It is apparent that Conn. Gen.Stat. § 53a–223(a) reaches means of committing the offense that present a serious potential risk of physical injury to another. A defendant could be convicted for violating a protective order by imposing a restraint upon the person of, assaulting, sexually assaulting, or entering the dwelling of a victim or witness. However, § 53a–223(a) is not limited in scope to means of committing the offense that present a serious potential risk of physical injury to another. In *Palmer*, the Second Circuit concluded that a Connecticut statute prohibiting in-

timidation based on bigotry covered means of committing the offense that fell outside the definition of "crime of violence" in what is now U.S.S.G. § 4B1.2(a). The statute at issue in *Palmer* read:

> A person is guilty of INTIMIDATION BASED ON BIGOTRY or bias if such person maliciously, and with specific intent to intimidate or harass another person because of such other person's race, religion, ethnicity or sexual orientation, does any of the following: (1) Causes physical contact with such other person; (2) damages, destroys or defaces any real or personal property of such other person; or (3) threatens, by word or act, to do an act described in subdivision (1) or (2), if there is reasonable cause to believe that an act described in subdivision (1) or (2) will occur.

*Palmer*, 68 F.3d at 53, n. 1 (citing Conn. Gen.Stat. § 53a–181b (1993)). In *Palmer*, the court did not explicitly address the phrase "otherwise involves conduct that presents a serious potential risk of physical injury to another," now found in U.S.S.G. § 4B1.2(a)(2), in its analysis of Conn. Gen Stat. § 53a–181b and what is now U.S.S.G. § 4B1.2(a). The court did explicitly address the language now found in U.S.S.G. § 4B1.2(a)(1). The court's analysis was as follows:

> In this case, the district court determined that the fact of Palmer's conviction under Conn.Gen.Stat. § 53a–181b sufficed to establish that he had committed a "crime of violence" within the meaning of USSG [§ 4B1.2(a) ], concluding that "the actual wording of the statute demonstrates that it has [the required] elements." We disagree with this conclusion. While § 53a–181b clearly covers conduct that entails "the use, attempted use, or threatened use of physical force against the person of another" within the meaning of

[§ 4B1.2(a)(1) ], it also covers conduct that falls outside that definition, because it addresses harassment as well as intimidation, and damage to "real or personal property" as well as "physical contact."

*Id.* at 56. Thus, although the court did not go into detail with respect to the phrase "otherwise involves conduct that presents a serious potential risk of physical injury to another," the analysis in *Palmer* necessarily encompasses a conclusion that the wording of the statute at issue also failed to demonstrate that its scope was limited to "conduct that presents a serious potential risk of physical injury to another." Also, it is apparent that the court did not simply overlook what is now § 4B1.2(a)(2), because later in the opinion it noted that "[t]he second sentence provides a generic description which must be consulted to determine whether unenumerated crimes fall within the [§ 4B1.2(a) ] definition." *Id.* at 57.

Significant to the analysis of the elements of the offense of criminal violation of a protective order is the fact that, in *Palmer*, the court concluded that because the statute at issue addressed harassment as well as intimidation, it covered a means of committing the offense that falls outside the definition of the term "crime of violence" in what is now U.S.S.G § 4B1.2(a). Here, the elements of the offense of criminal violation of a protective order in violation of § 53a–223(a) have been stated in any case where the charging instrument alleges only harassment of the victim or witness. The conduct engaged in could be, for instance, sending a letter or making a telephone call to the victim or witness. Although such conduct would not present a serious potential risk of physical injury to the victim or witness, a defendant could properly be charged and convicted under Conn. Gen.Stat. § 53a–223(a) for engaging

in such conduct.[2] Therefore, the court concludes that the elements of the offense under Conn. Gen.Stat. § 53a–223(a) encompass both means of committing the offense that present a serious potential risk of physical injury to another and means of committing the offense that do not.

■ The government argues that courts have uniformly held that crimes which pose a risk of physical injury, such as escape, certain types of burglary, and evading police, constitute "violent felonies," even though each of the offenses can be committed in a manner which does not result in actual physical injury and does not require the actual use of violence; an analysis of the term "violent felony" would apply by analogy to the term "crime of violence." The government contends that the rationale for classifying such offenses as career offender predicates is that physical injury *may* occur, and that in analyzing such offenses, courts have basically engaged in a risk calculus as to the likelihood that physical injury will occur as the result of a specific crime. With respect to the crime of escape, the government points to *United States v. Jackson,* 301 F.3d 59 (2d Cir.2002), where the Second Circuit held that the defendant's prior escape conviction qualified as a "violent felony" under the armed career criminal statute. In holding that "any escape, however effected, constitutes 'conduct that presents a serious potential risk of physical injury to another,' " the court noted that "escape invites pursuit; and the pursuit, confrontation, and recapture of the escapee entail serious risks of physical injury to law en-

forcement officers and the public." *Id.* at 63. *See also Taylor,* 495 U.S. at 588, 110 S.Ct. 2143 ("The fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate."); *James,* 127 S.Ct. at 1597 (attempted burglary qualifies as violent felony even if, on some occasions, it can be committed in a way that does not pose a realistic risk of confrontation or injury to anyone); *Powell v. United States,* 430 F.3d 490, 492 (1st Cir.2005) ("We agree with the view that high-speed car chases pose a grave threat of death and injury by collision, as well as escalated confrontations between suspects and police.").

However, in view of the Second Circuit's holding in *Palmer* and the fact that each of the statutes referenced in § 53a–223(a) pursuant to which a protective order can be issued contemplates provisions necessary to protect the victim or witness from harassment, the court finds this argument unpersuasive.

■ The government also argues that violation of a protective order will require law enforcement officials to effect an arrest, which presents the same risk of physical injury that exists when authorities must apprehend an escapee. The court finds this argument unpersuasive because the mere fact that an arrest must be effectuated is insufficient to qualify an offense as one which presents a serious potential risk of physical injury to another.

---

**2.** *See, e.g., State v. Fagan,* 280 Conn. 69, 905 A.2d 1101 (Conn.2006)(conviction for violating the protective order when the defendant drove by the victim's house, thereby coming within 100 yards of her); *State v. Calderon,* 82 Conn.App. 315, 844 A.2d 866 (2004) (conviction for violating the no-contact provision of the protective order when the defendant sent mail to his daughter); *State v. Cummings,* 46 Conn.App. 661, 701 A.2d 663 (1997) (conviction for violating the protective order when the victim saw the defendant's truck driving past her apartment).

Otherwise, virtually all criminal offenses could qualify as "crimes of violence."

Therefore, because the elements of the offense under § 53a–223(a) encompass both means of committing the offense that present a serious potential risk of physical injury to another and means of committing the offense that do not, the court must consider, in accordance with *Shepard,* the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented to determine whether the conduct for which the defendant was convicted for criminal violation of a protective order constituted a "crime of violence" within the meaning of § 4B1.2(a). The charging instrument merely indicates that the Deputy Assistant State's Attorney had reason to believe that the defendant committed the crime of violating a protective order in violation of Conn. Gen.Stat. § 53a–223 on or about February 28, 2003. Because the defendant pled *nolo contendere,* there were no jury instructions in the case. There was no written plea agreement. The very brief plea colloquy only indicates that the judge accepted a guilty plea for violating a protective order that "involve[s] Monica Booth" on February 28, 2003. There is no further description of the conduct for which the defendant was convicted and no explicit factual finding by the trial judge to which the defendant assented. Therefore, an examination of the documents and other information the court is permitted to consider under *Shepard* fails to establish that the defendant was convicted of a "crime of violence" as defined in U.S.S.G. § 4B1.2(a).

In *Begay,* a case interpreting 18 U.S.C. § 924(e), the Court concluded that the clause "otherwise involves conduct that presents a serious potential risk of physical injury to another" in § 924(e)(2)(B)(ii) only covers "crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves." *Begay,* 128 S.Ct. at 1585. The examples referred to are burglary, arson, extortion, and crimes involving the use of explosives. The court notes that the import of holding in *Begay* is that, assuming the offense of criminal violation of a protective order is similar to burglary of a dwelling, arson, extortion, or a crime involving the use of explosives in terms of the degree of risk of physical injury to another that is posed, criminal violation of a protective order would also have to be similar "in kind" to those enumerated crimes in order for criminal violation of a protective order to constitute a crime of violence as defined in U.S.S.G. § 4B1.2(a). However, it is not necessary for the court to reach this issue in order to resolve the question of whether the requirements for the career offender enhancement are satisfied in this case.

### III. CONCLUSION

For the reasons set forth above, the court concludes that the requirements for the career offender enhancement under U.S.S.G. § 4B1.1 are not satisfied in this case.

It is so ordered.